Glenda BROTHERTON *v.*
WHITE RIVER AREA AGENCY ON AGING
and Federated Mutual Insurance Company

CA 05-476                                                220 S.W.3d 219

Court of Appeals of Arkansas
Opinion delivered December 14, 2005

[Rehearing denied January 11, 2006.*]

---

* ROBBINS, J., would grant rehearing.

*Frederick S. Spencer*, for appellant.

*Friday, Eldredge & Clark*, by: *Betty J. Demory*, for appellee.

WENDELL L. GRIFFEN, Judge. Glenda Brotherton appeals from the denial of workers' compensation benefits, arguing that the Workers' Compensation Commission erred in determining that she was not performing employment services for appellee White River Area Agency on Aging ("the agency") when she was injured. Because we agree, we reverse and remand for an award of benefits.

Brotherton was employed by the agency and by Mary Jane Foster. Her duties for each involved serving as a personal-care aide for elderly or disabled individuals who lived with Foster. In total, five elderly or disabled women lived with Foster, who was paid by the women's families to provide twenty-four-hour care to the women. Foster is also a personal-care aide employed by the agency; four of Foster's five clients were agency clients, as well. The agency paid Brotherton to provide three hours of personal-care services per client to two of Foster's clients, one of whom was Maxine Raines. The duties to be performed for each client were prescribed pursuant to an agency care plan, that included feeding, toileting, bathing, grooming, dressing, meal preparation, and housekeeping services. Raines, in particular, was bedfast, requiring Brotherton to bathe her in her bed and to frequently assist her in using the toilet.

Although the normal routine for an agency personal-care aide is to go to a client's home, help that client for a specific number of hours, and then go to another home, the agency knew that was not the routine that Brotherton and Foster kept. As established by the testimony of Brotherton, Foster, and Leanne Kronnister, the agency's human-resources director, the agency knew that Brotherton also worked for Foster. The agency also knew that instead of working two successive three-hour shifts in which care was devoted exclusively to a "scheduled" client during each three-hour period, Brotherton arrived at Foster's home at 8:00 a.m. and worked for six hours. Brotherton was scheduled to work for Raines from 10:00 a.m. until 1:00 p.m. However, the agency knew that at any given time on her shift, Brotherton performed services for any of Foster's clients who needed assistance, including Raines.

Brotherton and Foster normally bathed the clients between 8:00 a.m. and 10:00 a.m. It is undisputed that at approximately 9:00 a.m. on July 16, 2002, Brotherton and Foster were in the process of bathing clients when Brotherton assisted Raines in using the toilet.[1] Raines began to slip as Brotherton moved her from her bed to a toilet at the end of the bed; as Brotherton lifted Raines onto the toilet, she experienced pain and a burning sensation in her neck. Brotherton experienced more severe pain when she again lifted Raines from the toilet and returned her to her bed. Brotherton immediately reported her injury to Foster.

Brotherton reported the injury to the agency on July 29, 2002, indicating that the injury occurred at 9:00 a.m. when she was helping Raines to use the toilet. Brotherton subsequently had surgery on her back. The agency controverted the claim, asserting that Brotherton was working for Foster when the injury occurred.

After a hearing, an Administrative Law Judge (ALJ) concluded that Brotherton sustained a neck injury at approximately 9:00 a.m. on July 16. In addition, based on the abnormal MRI findings and the doctor's records indicating that he removed disc fragments during surgery, the ALJ concluded that Brotherton established the existence of her injury by objective medical findings. The ALJ further found that the injury was causally related to the incident involving Raines.

Nonetheless, the ALJ concluded that the injury was not compensable because Brotherton was not performing employment services within the time and space boundaries of her employment with the agency because her injury did not occur within the time period that she was scheduled to work for Raines. Noting Kronnister's testimony indicating the agency's knowledge of the "unique" circumstances of Brotherton's employment situation, and because the agency offered no evidence that it lacked knowledge of the precise nature and timing of the various tasks performed by Brotherton in Foster's home, the ALJ concluded that the agency knew or should have known that Brotherton and Foster had a "set routine" by which they did not on July 16 follow the "precise schedule" supplied by the agency.

---

[1] It appears that Brotherton had just finished bathing Raines when the injury occurred. In her deposition testimony, Foster stated that Brotherton went to Raines room to "bathe her and get her up." Brotherton testified that she had just laid Raines's back in her bed when she said she needed to use the toilet.

The ALJ also inexplicably stated that had Brotherton become injured while assisting Raines to the *toilet between 10:00 a.m. and 1:00 p.m.*, her injury "would almost surely" have been compensable and that, had she been *bathing* Raines when she was injured, the injury might have been compensable, notwithstanding that she was scheduled to work from 10:00 a.m. to 1:00 p.m. Because he found that toileting occurred throughout the course of the day, the ALJ determined that it was a service that could be performed for either Foster or the agency. However, the ALJ concluded that Brotherton's act of assisting Raines to the toilet at 9:00 a.m. was an employment service performed for Foster, not the agency. Accordingly, he denied benefits. The Commission affirmed and adopted the ALJ's findings.

Brotherton now argues that the Commission erred in determining that her injury was not sustained in the course of her employment with the agency. In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Whitlach v. Southland Land & Dev.*, 84 Ark. App. 399, 141 S.W.3d 916 (2004). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.* The Commission is not required to believe the testimony of any witness, and it may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Holloway v. Ray White Lumber Co.*, 337 Ark. 524, 990 S.W.2d 526 (1999). The Commission may accept or reject medical opinions and determine their medical soundness and probative force. *Green Bay Packing v. Bartlett*, 67 Ark. App. 332, 999 S.W.2d 695 (1999).

A claimant may simultaneously work for multiple employers. *Cook v. Recovery Corp.*, 322 Ark. 707, 911 S.W.2d 581 (1995). If an employee is performing for and is under the control of two employers at the same time, then liability for workers' compensation benefits is joint. *Id.* However, if the work is separable, then the employer for whom the employee was providing services at the time of the injury is liable. *Id.*

A compensable injury is an accidental injury causing internal or external harm that arises out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(I) (Supp. 2005). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Collins v. Excel Spec. Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002). The test for determining whether an employee was injured while performing employment services is the same as the test for determining whether an injury occurred out of and in the course of employment: whether the injury occurred within the time and space boundaries of the employment when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id*; *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). Thus, the critical issue is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Collins, supra*.

Brotherton argues that because toileting is one of the services that she is required to perform for the agency and because it is undisputed that she was injured while performing toileting services on one of the agency's clients, the only reasonable conclusion that can be reached is that she was performing services within the time and space boundaries of her employment when she was injured. The agency counters that accepting Brotherton's argument would mean that she performed employment services *anytime* she was with a person who happened to be an agency client.

We do not agree that Brotherton's argument goes that far. We reverse the Commission's order because we believe that fair-minded persons could not find that Brotherton was not performing within the scope of her employment for the agency when she was injured. First, it is noteworthy that the agency does not dispute that the work is separable; in fact, it implicitly concedes that the work is separable because it maintains that Brotherton was performing work *solely* for Foster when she was injured. The agency is correct that the work was separable, but is incorrect in concluding that Brotherton was working for Foster at the time of her injury. In short, the services Brotherton performed for the agency were completed during her six-hour shift that began at 8:00 a.m., and therefore, were separable from the other work she performed for Foster before or after that time, even though the work involved the same tasks.

Moreover, Brotherton was performing within the time and space boundaries of her employment with the agency because her six-hour shift for *the agency* began at 8:00 a.m., and she was injured at 9:00 a.m. Thus, she was clearly "on the agency's clock" when she was injured. The Commission's decision ignores this fact and, instead, places undue emphasis on the fact that Brotherton was injured outside of the time period that she was scheduled to work specifically for *Raines*.

Even if it were true that Brotherton was injured during a time when the agency was not compensating her, that would not preclude a finding that her injury was compensable. Clearly, an injury that occurs during non-scheduled work time may be compensable if the claimant is furthering her employer's interests at the time or if the employer requires the employee to provide assistance if needed during that non-scheduled work time. *Wal-Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002) (affirming a finding that a claimant was performing employment services when, pursuant to her employer's rules, she returned to her locker to secure her personal items before returning to work after an unpaid break). Thus, despite the agency's argument to the contrary, the fact that Brotherton was not injured during the three-hour period that she was "scheduled" to work for Raines does not preclude a finding that she was directly or indirectly furthering the interests of her employer.

In any event, it is clear that Brotherton was injured during *agency-scheduled* work hours. Furthermore, she was injured while performing an *agency-contracted service* (one of an especially sensitive nature) for her *own agency client*. On these facts, the agency's argument is rather unpersuasive that in doing so, Brotherton performed work that the agency did not generally require of her or that she did not directly or indirectly advance the agency's interests. In fact, Kronnister admitted that the agency benefited when an aide assisted another person in the residence who was creating a disturbance (which would be expected of a person who needs assistance to use the toilet when that assistance is not forthcoming).

The fact that the agency received a benefit is further demonstrated by the fact that it would have been a *detriment* to the agency had Brotherton *refused* to assist Raines because she was not "scheduled" to help her. This was recognized by Kronnister who testified that as an employer, she "probably" would not abide an aide's refusal to assist one client who needed assistance because the need arose during the time blocked off for another client. It is

manifestly unjust to deny a claimant benefits where she was injured performing a service for which she could lose her job had she *not* performed these same services.

Finally, the Commission's decision ignores the effect of the agency's acquiescence to this unique employment situation. *Arkansas Methodist Hosp. v. Hampton*, 90 Ark. App. 288, 205 S.W.3d. 848 (2005) (holding that an intensive-care nurse who received no scheduled breaks was performing employment services where she was injured while going to the cafeteria to purchase breakfast for herself and her fellow nurses because the hospital acquiesced in the practice and expected her to advance the hospital's interest no matter where she was in the hospital). Here, the agency knew that it employed Brotherton and Foster, knew that four of Foster's five clients were also agency clients, knew that Brotherton also worked for Foster, and knew that these employees did not, and in fact, could not, strictly observe the agency's service schedule. Specifically, the agency knew even though Brotherton was "scheduled" to work for Raines from 10:00 a.m. to 1:00 p.m., she in fact, assisted Raines at any time during the entire six-hour period for which the agency compensated her. Further, Kronnister's testimony clearly establishes that, like the employer in *Hampton, supra*, the agency here expected Brotherton to advance the agency's interests as long as she was "on the clock."

This is not to say that any injury Brotherton received while working for one of the agency's client's in Foster's home would have been compensable. Rather, the holding in this case is limited to the unique manner in which employment services were performed to which the employer clearly acquiesced. Here, the claimant's injury was compensable considering the specific facts that, with the employer's knowledge and implicit consent, she was clearly performing a service for her own agency client that she was specifically contracted to perform and did so during her agency-scheduled hours. On these facts, we believe that reasonable minds would not have reached the Commission's conclusion. *Whitlach, supra*. Accordingly, we reverse the Commission's order and remand for an award of benefits.

Reversed and remanded.

BIRD, CRABTREE, BAKER, and ROAF, JJ., agree.

ROBBINS, J., dissents.

JOHN B. ROBBINS, Judge, dissenting. I respectfully disagree with the majority opinion, which concludes that there is no

substantial evidence to support the Commission's finding that Brotherton's injury was not sustained in the course of her employment with White River Area Agency on Aging.

The majority cites *Arkansas Methodist Hospital v. Hampton*, 90 Ark. App. 288, 205 S.W.3d 848 (2005), as an example of when "performing employment services" may include an employee's mere availability to act for the employer, if needed. That case is hardly relevant and is easily distinguished because it did not involve a second employer who was compensating the employee at the time of the injury, as the Commission found in the instant case. Furthermore, I take issue with the majority opinion's statement that the Commission ignored the Agency's acquiescence to a less-than-rigid work schedule. To the contrary, the Commission acknowledged that this was a unique work situation and offered an alternate scenario that might have proved compensable despite the timing of the injury.

More to the point, the majority opinion has resorted to fact finding in order to reverse the decision of the Commission in this instance. A review of the evidence that supports the Commission's decision, and the relevant facts found therein, include the following:

(1) Brotherton worked for the Agency part time and for Mary Jane Foster part time at Foster's residence where five elderly ladies resided and received assistance.

(2) Brotherton began her day's work at approximately 8:00 a.m. and worked until she and Foster were "caught up."

(3) The Agency paid Brotherton to provide three hours of personal care services each day to Maxine Raines, one of Foster's residents.

(4) The Agency also paid Brotherton to provide three hours of personal care services each day to Flora Shinaro, another of Foster's residents.

(5) Foster paid Brotherton $1100 per month to provide services for any of Foster's five residents, and the pay was for any service rendered when Brotherton was not "on the clock" for the Agency.

(6) Brotherton's work schedule with the Agency reflected that her three hours of services for Maxine Raines were to be rendered from 10:00 a.m. to 1:00 p.m.

(7) The record does not reflect when Brotherton was scheduled to render the three hours of services to Flora Shinaro.

(8) Brotherton was injured while assisting Raines to the toilet at 9:00 a.m. on July 16, 2002.

(9) Maxine Raines routinely and often requested toileting assistance.

(10) The billing form Brotherton provided to the Agency set forth that on July 16, 2002, she provided services to Maxine Raines from 10:00 a.m. to 1:00 p.m.

(11) Many portions of Brotherton's testimony at the hearing were deemed suspect.

I submit that the foregoing evidence constitutes substantial evidence in support of the Commission's finding that Brotherton failed to prove that she was performing employment services for the Agency at the time of her injury. To conclude otherwise requires fact finding, a function that is left to the Commission and not the appellate courts. The majority agrees that the employments are separable even though the tasks are the same, and it then *finds* that Brotherton's Agency employment time was 8:00 a.m to 2:00 p.m. There is no such evidence of record. Our task is to review the evidence favorable to the Commission's decision and decide if such evidence is substantial. In other words, could reasonable minds conclude that Brotherton failed to prove that she was "on the clock" for the Agency when she was hurt? Under proper application of the standard of review, the answer is yes. The majority opinion errs by holding otherwise.