
# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV–16–850

| | |
|---|---|
| BROOKSHIRE GROCERY COMPANY<br>APPELLANT<br><br>V.<br><br>CLEON MORGAN, SR.<br>APPELLEE | **OPINION DELIVERED:** JUNE 21, 2017<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G401760]<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellant Brookshire Grocery Company files this one-brief appeal from the August 9, 2016 Arkansas Workers' Compensation Commission (Commission) opinion in which the Commission affirmed and adopted the Administrative Law Judge's (ALJ) January 14, 2016 decision that found that it was a dual employer of appellee Cleon Morgan at the time of his injury.

## I. *Facts*

Appellee, aged sixty (D.O.B. December 5, 1956), completed his high school education and training at the police academy. His health history includes a recent non-work-related back surgery. His work experience includes employment as a volunteer sheriff, a city police officer, and since January 2010, a deputy sheriff for Jefferson County. As a deputy sheriff, he serves warrants, transports prisoners, conducts routine patrols, performs security checks, handles security at the county courthouse, and works motor-vehicle accidents. He is provided a uniform, a badge, a Taser, a gun, and a patrol car by the Jefferson

County Sheriff's Department (Department) and is authorized to make arrests within Jefferson County. Appellee works from 8:00 a.m. to 5:00 p.m. five days a week for the Department.

After one year of service, the Department allows officers to work part time with its permission. This permission must be renewed in writing each year. The Department does not allow anyone to work more than twenty hours per week in part-time employment. Deputies are allowed to use their county-issued equipment to perform their private, off-duty jobs.

In 2012, appellee began working part time for appellant approximately ten hours per week after having learned about the job opportunity through the Department. Appellant did not provide any equipment or employee benefits to appellee; likewise, he received no training or supervision from appellant.

Appellee's primary job for appellant is to be visible up front in appellant's store, and his duties include apprehending shoplifters and keeping order in the store. While working at appellant's location, appellee is also allowed to apprehend people with outstanding warrants—that are unrelated to appellant—transport them to jail, then return to appellant's store and resume his job duties as a security guard.

On February 19, 2014, appellee injured his ankle while securing a shoplifter while performing his security-guard duties at appellant's place of business. Initially, appellee thought he had sprained his ankle, but after receiving medical treatment, he was diagnosed with ligament tears. He missed five weeks of work from both his job for appellant and his job for the Department.

SLIP OPINION

After the injury, appellee's supervisor at the Department told him that the injury was covered by workers' compensation but that the Department's carrier had denied the claim. Appellee paid for his medical treatment with his group health insurance and used sick leave from the Department during his time off from work.

A hearing was held before the ALJ to determine appellee's entitlement to medical expenses and temporary total-disability benefits. Specifically at issue was the employment relationship between the parties. Appellant claimed that at the time of the injury, appellee was acting in his capacity as a deputy and that, accordingly, appellant had no liability. The Department contended that appellee was off duty at the time of the injury and was being paid by appellant to act as a security guard. The Department argued alternatively that appellee was acting as a dual employee under appellant's control and that appellant is either liable or should split appellee's expenses and benefits.

The ALJ found in its January 14, 2016 opinion that appellee was a joint employee of both appellant and the Department at the time he suffered his injury and that both were liable for benefits and expenses. The ALJ determined that appellee was employed full time as a county deputy and part time as a security guard for appellant. It was noted that both employers acquiesced to this symbiotic relationship, and both benefited from the relationship. The Commission affirmed and adopted the ALJ's findings without discussion in its August 9, 2016 opinion. Appellant filed a timely notice of appeal on September 2, 2016.

## II. *Standard of Review*

The standard of review in workers'-compensation cases is well settled. On appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirms that decision when it is supported by substantial evidence. *Wilhelm v. Parsons*, 2016 Ark. App. 56, 481 S.W.3d 767. It is for the Commission to determine where the preponderance of the evidence lies. *Id.* Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. *Id.* It is exclusively within the province of the Commission to determine the credibility and the weight to be accorded to each witness's testimony. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* Additionally, evidence is reviewed impartially, without giving any benefit of the doubt to either party. Ark. Code Ann. § 11-9-704 (Repl. 2012).

## III. *Discussion*

Appellant argues that the Commission erred when it held that appellee was its employee and not an independent contractor on the day appellee's injury occurred. Appellant reiterates that it contracts with the Department to provide part-time security for its stores. Appellant maintains that as a deputy sheriff, appellee is considered "on duty" twenty-four hours a day, even though he may not be officially scheduled to be working. While working at appellant's store, appellee wore his deputy's uniform, carried his gun and

badge, and for all practical purposes appeared as he did when he was "on the clock" with the Department. He was required to follow the policies of the Department when working for appellant. Appellee received his orientation for the security-guard position with appellant from fellow deputy sheriffs who also had worked security for appellant before he assumed those duties. He received neither orientation from appellant nor copies of its policies and procedures regarding his duties. Appellant reiterates that appellee retained his arrest powers and had, on occasion, arrested people inside appellant's store for outstanding warrants that had nothing to do with their activities occurring inside appellant's store.

Appellee was paid by the hour by appellant and had no taxes withheld from his check. He did not receive any benefits from appellant as is standard for regular employees, and he did not use the time clock to clock in and out for the time he worked. Appellee's work hours for appellant were scheduled by a fellow deputy rather than a member of appellant's management.

Appellant points out that on the day of the accident, appellee noticed a lady who was acting suspicious inside appellant's store. No other employee of appellant alerted him of the shopper; he personally observed her. Appellee then reviewed appellant's in-store security-camera footage, which confirmed that the lady had shoplifted merchandise. Appellee testified that when he saw her shoplifting, he shifted into "arrest mode," confronted her, and handcuffed her with his Department handcuffs. He did not seek any assistance or permission from appellant's personnel when he decided to apprehend her. After she had been taken upstairs at appellant's place of business, the shoplifter asked to go to the restroom,

at which point appellee took one handcuff off, and the shoplifter fled on foot. It was at this point, while giving chase, that appellee injured his ankle.

After the injury, appellee contacted the Department regarding this accident. His superior officer, Major Lafayette Woods, advised him that it was a workers'-compensation claim and that he should go to the doctor. Appellee did not ask appellant for medical treatment, only the Department.

Appellant cites *Blankenship v. Overholt*, 301 Ark. 476, 786 S.W.2d 814 (1990), regarding the analysis of independent contractors. In *Blankenship*, our supreme court reiterated the following factors to be used to determine if a person is an independent contractor or an employee: (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether the work is part of the regular business of the employer; (i) whether the parties believe they are creating a relation of master and servant; and (j) whether the principal is in business. *Id*. The Commission, in making this determination, generally gives the most weight to how much control the alleged employer has over the details of the work that produced the injury. *See id*.

Courts look to the "control issue" as a probative factor in these situations. It is control of not only the result of the work, but also the means and manner of the performance of the job that is critical. If control of the means is lacking and the employer does not undertake to direct the way the employee shall work and discharge his duties, the relationship of an independent contractor exists. *Woodmancy v. Franco, Inc.*, 2011 Ark. App. 785, 387 S.W.3d 286; *see also Draper v. ConAgra Foods, Inc.*, 92 Ark. App. 220, 212 S.W.3d 61 (2005). It has been held that the more the worker's occupation resembles the business of the employer, the more likely the worker is an employee. *Wilhelm*, *supra.*

Appellant notes that it is not in the business of providing security but rather that of selling groceries. Appellant does not provide any instrumentalities of work such as a uniform, a gun, pepper spray, handcuffs, etc. It also does not provide any training for the security guards. Appellee was paid by the hour, no taxes were withheld, and he did not receive any benefits that the other employees received. Appellee did not have to clock in and out as regular employees do. It is important to note that at the time he began employment, appellee met with a previous deputy sheriff who was handling the security detail to go over the job and received his instructions from that deputy. He did not meet with any appellant representative. Appellee testified that appellant did not control his activities and that his job was to observe the store and to act on what he observed. In this case, no personnel of appellant had knowledge of the shoplifter until appellee observed the shoplifter and reviewed the theft on appellant's in-store security-camera footage. It was then that appellee moved in and handcuffed the shoplifter.

The ALJ stated in her opinion that determined employee status in this case, "[t]he claimant was injured while apprehending a shoplifting suspect who had escaped custody. The claimant was acting in the course of his job as a law enforcement professional and his injuries arose out of that employment." In line with *Gibson*, *supra*, at the time of the actual injury, appellee was pursuing a suspect who had been handcuffed and was evading arrest. Appellee acknowledged having shifted to "arrest mode" and having pursued the shoplifter as he would anyone else fleeing from the law.

Appellant contends a review of the facts demonstrates that appellee was an independent contractor and not its employee. It claims that the record is absent of any evidence that appellant had the right to control the details or manner in which appellee conducted his security-guard duties while he was working at appellant's store and that his injury was the result of a law-enforcement function of an attempt to capture a fleeing arrestee.

In *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008), our supreme court reiterated the factors set out in the *Restatement Second of Agency* § 220(2) (1958) that are to be weighed in drawing the line between independent contractor and employee:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> . . . .
>
> (h) whether or not the work is a part of the regular business of the employer.

*Id.* at 365, 276 S.W.3d at 248.

Regarding the issue of control, the court acknowledged that it has long held that an independent contractor is one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the result of the work. *Id.* at 366, 276 S.W.3d at 249. The court went on to clarify that the right to control is the principal factor in determining whether one is an employee or an independent contractor, and that it is the right to control, not the actual control, that determines the relationship. *Id.* (citing *Taylor v. Gill*, 326 Ark. 1040, 934 S.W.2d 919 (1996)).

With respect to the arrangement between appellant and appellee, appellant maintains that it had no right to control the means and methods by which appellee performed his security-guard duties and notes that it had no contract with appellee. While appellee's duties and responsibilities as a security guard were consistent with, and in many ways parallel to, those of his Department duties, that does not necessarily mean that appellant had no right to require him to perform other store-related activities such as check shopping carts, interview customers, secure an entrance or exit, all of which are above and beyond, and distinct from, his duties as a deputy.

Regarding the second factor, whether appellee is engaged in a distinct occupation or business, there is overlap between the duties he performs for appellant and the duties he performs for the Department. But at the time of his injury, it is undisputed that he was acting in his capacity as a security guard for appellant and performing his responsibilities of apprehending a shoplifter on appellant's premises.

Finally, we disagree with appellant's analysis with respect to whether appellee's work is a part of the regular business of appellant. While appellant submits that it is not in the

business of providing security but rather that of selling groceries, employing security guards at its various grocery-store locations is a regular, ongoing aspect of running its business.

While acknowledging that appellee was injured apprehending a shoplifting suspect who escaped custody and while performing duties as a security guard, it is undisputed that his injury arose from the performance of his usual and ongoing job duties while he was being paid by appellant, including confirming the criminal activity by using appellant's in-store security-camera footage. Under these circumstances, the ALJ and the Commission found that both employers were liable for benefits and expenses because both employers benefited from the employment relationship. *See Cook v. Recovery Corp.*, 322 Ark. 707, 911 S.W.2d 581 (1995). In *Brotherton v. White River Area Agency on Aging*, 93 Ark. App. 432, 220 S.W.3d 219 (2005), this court held that a claimant may simultaneously work for multiple employers and that if an employee is performing for and is under the control of two employers at the same time, then liability for workers'-compensation benefits is joint. *Id.* However, if the work is separable, then the employer for whom the employee was providing services at the time of the injury is liable. *Id.* Appellant argues that appellee was not a dual employee, yet it is clear that his injury occurred at a time when appellant was compensating him and during the course of his usual duties that specifically furthered appellant's interests.

Although the Arkansas Workers' Compensation Act does not define the dual-employment doctrine, our supreme court applied the doctrine in *Daniels v. Riley's Health & Fitness Centers*, 310 Ark. 756, 840 S.W.2d 177 (1992), and *National Union Fire Insurance v.*

SLIP OPINION

*Tri-State Iron and Metal*, 323 Ark. 258, 914 S.W.2d 301 (1996). *See also Beaver v. Jacuzzi Brothers, Inc.*, 454 F.2d 284 (8th Cir. 1972) (applying Arkansas law).

In *Daniels*, the court affirmed the trial court's grant of summary judgment in accordance with the dual-employment doctrine and workers'-compensation exclusivity. 310 Ark. 756, 761, 840 S.W.2d 177, 179 (1992). Daniels sued for injuries he received while working for appellee, having been sent to work for the club by Aaron Temporary Services, a temporary-employment agency. On appeal from the grant of summary judgment because of the exclusivity of the workers'-compensation remedy under Arkansas Code Annotated § 11-9-105 (Repl. 2012), Daniels alleged that he was employed by the temporary-employment agency and not by the appellee; and thus, his claim against the appellee was not barred by the exclusive-remedy doctrine. Our supreme court rejected this argument, finding that for purposes of workers'-compensation exclusivity, Daniels was employed by both the temporary-employment agency and the appellee to which he was furnished to work. *Id.* at 758, 840 S.W.2d at 177. The court explained that Arkansas applies the dual-employment doctrine when the following three factors are met:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) The employee has made a contract for hire, express or implied, with the special employer;
> (b) The work being done is essentially that of the special employer; and
> (c) The special employer has the right to control the details of the work.

*Id.* at 759, 840 S.W.2d at 178 (citing *Charles v. Lincoln Constr. Co.*, 235 Ark. 470, 361 S.W.2d 1 (1962)).

Analyzing these elements, the court concluded that at the time of his injury, Daniels was performing the work of the appellee when he was injured and that the appellee exercised the right to control the performance of his work. *Id.* at 759, 840 S.W.2d at 178. The court noted that there may be employment by virtue of an implied contract and that there may be situations where the employee is under contract with different employers simultaneously. *Id.* The court held that although Daniels was provided to the appellee by a temporary-employment agency, an implied employment contract also existed between Daniels and the appellee that he worked for at the time of his injury. *Id.*

In the instant case, appellee was injured during the course of performing his regular duties as a private security guard in furtherance of appellant's interests in maintaining a secure store. Based on the specific facts of this case and the particular incident, at the time of the incident, appellant had more control over appellee's ongoing actions with respect to the shoplifter than did the Department. Appellant had the right to control whether to proceed with charging the shoplifter, and appellee was acting pursuant to its decision as evidenced by his taking her upstairs on the premises upon apprehension. Accordingly, we hold that the Commission did not err in adopting and affirming the dual-employer finding of the ALJ.

Affirmed.

HARRISON and MURPHY, JJ., agree.

*PPGMR Law, PLLC*, by: *R. Scott Morgan* and *Patarick Feilke*, for appellant.

No response.