# Judy BEAVER *v.* BENTON COUNTY CHILD SUPPORT UNIT

CA 98-927                                         991 S.W.2d 618

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered April 14, 1999

*Odom & Elliott*, by: *Conrad T. Odom*, for appellant.

*Bassett Law firm*, by: *Curtis L. Nebben*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's decision finding that appellant failed to prove that she sustained a compensable back injury. On appeal, appellant argues that there is no substantial evidence to support the Commission's denial of benefits. We disagree and affirm.

Appellant began working for appellee in October of 1995. She was employed as an investigator, and her duty was to pursue noncustodial parents for enforcement of child-support obligations. On April 28, 1997, appellant was attending a two-week instructional seminar that was held at the Holiday Inn Civic Center in Fort Smith. A supervisor and other employees of appellee were also attending the seminar. The purpose of the seminar was to train employees in new computer software that the State was installing. Appellee provided an allowance for two dinner meals and lunch each day. However, no one was required to eat at a certain location or as a group. The lunch break was considered free time and everyone could do as they pleased. On April 28, the group went to eat lunch at the Holiday Inn Civic Center. Appellant testified that when she was approaching the buffet she slipped on the wet floor. She grabbed onto a coworker who broke her fall enough that she only hit the floor with her right knee. Appellant did not seek medical treatment but finished lunch and completed the remainder of the seminar. Appellant finally sought medical treatment on June 5, 1997. The medical evidence reveals that appellant was diagnosed with pyriformis syndrome and retropatellar pain syndrome. On June 9, 1997, appellant saw Dr. James M. McKenzie who believed appellant had sciatica. An MRI was performed on July 8, 1997, which revealed a central disc herniation at L4-5. Appellant subsequently filed this claim for benefits in connection with her fall on April 28, 1997.

On appeal, appellant argues that there is no substantial evidence to support the Commission's finding that she was not performing employment services at the time of her injury. We disagree.

On appellate review of workers' compensation cases we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). We should affirm the Commission's ruling if there is any substantial evidence to support the findings made. *Id.* Act 796 of 1993, which applies to all workers' compensation injuries incurred after July 1, 1993, requires that the provisions of the workers' compensation statutes be strictly construed. Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996). This act excludes from the definition of "compensable injury" any injury inflicted upon the employee at a time when employment services were not being performed. Ark. Code Ann. § 11-9-102(5)(B)(iii) (Supp. 1997). We have held that an employee is performing "employment services" when he is "engaging in an activity that carried out the employer's purpose or advanced the employer's interests." *Hightower v. Newark Pub. Sch. Sys.*, 57 Ark. App. 159, 943 S.W.2d 608 (1997).

In the case of *Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998), the claimant argued, on public policy grounds, that her break advanced her employer's interest by allowing her to relax, which in turn helped her to work more efficiently throughout the rest of her work shift. Under former law, the definition of compensable injury did not include a strict requirement that the injury occur while the worker was performing employment services, and a claimant's activities at the moment of injury were relevant only to the separate and broader question of whether the injury arose out of and in the course of the employment. *See id.* It is clear that, under former law, the claimant's injury while en route to the break area would have been in the course of her employment pursuant to the personal-comfort doctrine. *See Lytle v. Arkansas Trucking Services*, 54 Ark. App. 73,

923 S.W.2d 292 (1996). However, the personal-comfort doctrine is no longer the law. Now, Act 796 of 1993 applies and, although the claimant's break may have indirectly advanced her employer's interests, it was not inherently necessary for the performance of the job she was hired to do. Consequently, we held in *Harding* that the Commission did not err in finding that appellant was not performing employment services when she was injured.

Like the case of *Harding*, Act 796 of 1993 is applicable to the case before us. Here, appellant was on her lunch break walking up to the lunch buffet line when she slipped on a wet floor. According to the record, lunch was considered free time. Ms. Kay Crabb, director of Child Support Enforcement Unit in Benton County, testified that lunch with the group was not mandatory because, if it had been, the other ladies who did not eat with the group would not have had their lunches compensated. She also said that the people in the group were free to do whatever they wanted on their lunch break.

Also, it does not appear from the record that the registration fee for the conference included meals served on site at the conference. In fact, the record indicates that it was discretionary with each county whether it would pay for lunches or dinners for employees at the seminar. According to Ms. Crabb, there were certain people in their office who could not afford to pay for their lunches every day, and that that was something that was discussed when obtaining approval for the payment of lunches for all the employees. It appears from the record that appellee was paying for the employees' lunches, not for its own benefit, but for the benefit of its employees. Usually, any person who works an eight-hour day has an uncompensated lunchtime. Fortunately for these employees, appellee paid for their lunches.

The Commission found that:

> [t]he claimant was not benefitting her employer at the time of the incident. Whether or not the respondents were paying for lunch is of no moment. As in *Jackson*, once the claimant began to actively participate in lunch, she was on her lunch break and was no longer performing an "employment activity." The claimant

was neither pursuing noncustodial parents nor training in the new computer program, her purpose for attending the seminar. The alleged injury did not occur within the time and space boundaries of claimant's employment, as required by Ark. Code Ann. § 11-9-102(5)(A)(i) (Repl. 1996). There is no authority under Act 796 of 1993, which we must strictly construe, that suggests the claimant was performing employment services.

▪    After reviewing the record, we cannot say that there is no substantial evidence to support the Commission's decision that appellant was not engaged in employment services at the time she fell. We agree with the Commission that the fact that the appellee paid for the lunches is of no moment, and it was inconsequential that appellee encouraged the group to eat together when viewed against all of the other evidence. There is substantial evidence to support a finding that appellant was not advancing her employer's interest when she was on her lunch break walking to the buffet. Because we have affirmed this case on appellant's first issue, we need not address her second point on appeal.

Affirmed.

PITTMAN, STROUD, MEADS, and ROAF, JJ., agree.

BIRD, J., concurs.

SAM BIRD, Judge, concurring. I agree with the majority that appellant was not performing employment services at the time of her injury, but I write separately because I believe the Commission, in reaching that result, has misinterpreted Ark. Code Ann. § 11-9-102(5)(A)(i) (Repl. 1996) and prior decisions of this court in stating that appellant's injury is not compensable because it did not occur while she was in the process of pursuing noncustodial parents or training on the new computer program.

The Commission's narrow interpretation has already been rejected by this court in cases where we have held that the term "employment services," within the meaning of section 11-9-102, does not mean that for an employee's injury to be compensable, it must occur while the employee is engaged in the performance of the precise employment task to which he or she has been assigned.

For example, in *Crossett School District v. Fulton*, 65 Ark. App. 63, 984 S.W.2d 833 (1999), we held that an injury was compensable when the employee fell on ice in the employer's parking lot where she was retrieving from her car reading glasses that she needed to do her assigned work; and in *Fisher v. Poole Truck Line*, 57 Ark. App. 268, 944 S.W.2d 853 (1997), we held that a truck driver's injury was compensable even though it occurred when the employee was in an automobile accident while he was transporting in his own car the results of a physical examination that his employer had required before giving him a work assignment. In neither of those cases was the employee performing his or her assigned work tasks at the time of the injuries, yet the injuries were found to be compensable.

While it is true that Act 796 of 1993 requires us to strictly construe its provisions, I do not believe that strict construction requires that the Act always be interpreted in a way that will most likely deny benefits. The term "strict construction" is a two-edged sword. The Act does not require that its terms be strictly construed only against the employee. Arkansas Code Annotated section 11-9-101 (Repl. 1996) states that the purpose of the workers' compensation law is to provide benefits "to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment. . . ."

In the instant case, I agree that appellant was not engaged in employment services while she was on her lunch break, notwithstanding that her employer was paying for the lunch. However, I do not agree with the Commission's denial of the claim because she was not, at the moment of her injury, pursuing noncustodial parents or training on the new computer program.