## ARKANSAS METHODIST HOSPITAL
### and Arkansas Property & Casualty Guaranty Fund
### for Reciprocal of America, in Receivership  v.
### Sandra HAMPTON

CA 04-988                                         205 S.W.3d 848

### Court of Appeals of Arkansas
### Opinion delivered March 23, 2005

*Womack, Landis, Phelps, McNeill & McDaniel,* by: *Mark Mayfield,* for appellants.

*John Barttelt,* for appellee.

WENDELL L. GRIFFEN, Judge. Arkansas Methodist Medical Center (the hospital) and Casualty Guaranty Fund for Reciprocal of America appeal from the award of workers' compensation benefits to appellee, Sandra Hampton. Their sole argument is that the Arkansas Workers' Compensation Commission erred in determining that appellee was performing employment services when she was injured in a fall at work while going to obtain meals for herself and her co-workers during their twelve-hour shift. We hold that appellee's activities served at least to indirectly advance the interests of her employer. Thus, we affirm the Commission.

### Background Facts

Appellee was a registered nurse in the Intensive Care Unit (ICU) of the Arkansas Methodist Medical Center in Paragould, Arkansas. The ICU is an eight-patient unit where each licensed nurse is assigned two patients. There must be a minimum of two licensed nurses in the unit at all times. Appellee was one of eight licensed nurses who worked a twelve-hour shift, from 7:00 a.m. to 7:00 p.m., with no scheduled breaks. The practice was for the nurses to clock in at approximately 6:45 a.m. and to immediately begin reviewing reports from the outgoing nurses. Appellee was required to visually check her two patients at various intervals, review their charts, and observe their monitors.

Because the nurses received no scheduled breaks, they took turns picking up breakfast for the unit from the hospital cafeteria at approximately 7:15 a.m. The food was taken to the ICU breakroom and eaten while the nurses worked on the patients' charts. The break-room was enclosed in glass, allowing the nurses to be in visual contact with their patients at all times.

On the morning of December 12, 2002, appellee was one of three licensed nurses on duty in the ICU. She left the unit at

approximately 7:15 a.m. because it was her turn to pick up breakfast. The ICU is located on the first floor of the hospital; the cafeteria is located in the basement. Appellee took the stairs to the cafeteria because it was the quickest route. She injured her hip when she tripped on a metal transport cart that was left in front of the stairwell door. She ultimately had hip replacement surgery and had not been released to return to work at the time of the hearing in this case.

Appellee acknowledged before the Administrative Law Judge (ALJ) that the hospital did not prohibit employees from bringing food into the hospital or from eating at their work stations. She also admitted that she did not go to the cafeteria at the direction of her supervisor. Further, she stated that she performed her job duties in the ICU. Appellee conceded that once she was out of the ICU she could not monitor her patients, hear the monitors sound, or respond to a call light. She testified that when she went to get breakfast, she did not "dawdle" and that it was important to get the food and return to the ICU quickly.

Kelly Blake, the hospital's Human Resources Director, testified that the nurses are allowed to go to the cafeteria, but are not required to do so. She further testified that employees are allowed to take short breaks, for which they are paid, and may leave the hospital to retrieve items from their cars. She confirmed that ICU nurses work the complete twelve-hour shift without any scheduled breaks.

The ALJ denied benefits and concluded that appellee was not performing employment services at the time of her injury. The ALJ cited the following factors: 1) appellee's work station was on the first floor, in the ICU unit, and involved ICU patients; 2) the cafeteria was not on the same floor as the ICU; 3) the hospital did not mandate that its employees purchase food from the cafeteria; 4) appellee was not at the location of her job when she was injured; 5) she could have brought food with her to eat at her work station or could have eaten breakfast before she arrived.

The Commission reversed the ALJ and concluded that the ALJ erroneously relied on the fact that the hospital did not require its employees to purchase food in the cafeteria and that the cafeteria was on the first floor. The Commission relied, first, on the fact that the hospital required the ICU nurses to work a twelve-hour shift with no scheduled breaks, which meant appellee could not have left the premises to eat. Thus, the Commission found that the hospital could not have reasonably expected that the

ICU nurses would not eat for a twelve-hour period, should have expected them to utilize the hospital cafeteria, and in essence, acquiesced to that practice.

The Commission expressly relied upon our decision in *Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999), in which we held that a cafeteria worker was performing employment services when she slipped and fell on a puddle of salad dressing during a paid break. There, we relied on the fact that the worker would have been required to cease her personal activities if a university student needed assistance. *Id.* Applying *Ray* to the instant case, the Commission concluded that appellee was within the time and space boundaries of her employment when she was injured because she was "on the clock," did not leave the hospital, and could have been asked to assist another patient or hospital employee while she was out of the unit. The Commission maintained that because appellee was required to work a twelve-hour shift with no break, the hospital expected her to advance its interests no matter where she was in the hospital.

The Commission also concluded that the hospital directly benefitted from appellee obtaining breakfast for the other nurses, reasoning that the hospital's purpose of offering quality patient care was furthered because only one nurse was away from the unit. Thus, the Commission found that, as in *Ray*, the benefit was directly related to the job that appellee performed and held that appellee was performing employment services when she was injured.

*Discussion*

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Whitlach v. Southland Land & Dev.*, 84 Ark. App. 399, 141 S.W.3d 916 (2004). Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.*[1]

---

[1] Appellants assert that we should review this case *de novo*, contending that whether appellee was performing employment services is a matter of law because there are no factual disputes. However, even if there is no dispute about how the injury occurred, whether a claimant was performing employment services is a factual determination for the Commission

■ A compensable injury is an accidental injury causing internal or external harm that arises out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(I) (Supp. 2003). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Collins v. Excel Spec. Prods.*, 347 Ark 811, 69 S.W.3d 14 (2002). The test for determining whether an employee was injured while performing employment services is the same as the test for determining whether an injury occurred out of and in the course of employment: whether the injury occurred within the time and space boundaries of the employment when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id*; *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). Thus, the critical issue is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Collins, supra.*

Appellants argue that appellee was not performing employment services because she was not carrying out the hospital's purpose or advancing its interest by getting breakfast for herself and the other ICU nurses. Appellants rely on several cases for their argument that the hospital received no benefit from appellee's act of getting breakfast. They cite *Robinson v. St. Vincent Infirmary*, 88 Ark. App. 168, 196 S.W.3d 508 (2004), for the proposition that a hospital employee retrieving lunch is not performing employment services. In that case, the claimant, who was on her lunch break, was injured as she went from the second floor of the hospital to the fourth floor to get her coin purse and lunch. We affirmed the Commission's finding that she was not performing employment services because her intention was to get her lunch and personal effects and then go to the hospital cafeteria. Thus, we perceived no benefit to her employer by her act of going to the fourth floor to get her lunch.

to make. Accordingly, we review that issue on the substantial-evidence standard. *See Collins v. Excel Spec. Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002).

Appellants also maintain that this case is distinguishable from *Ray, supra,* the case relied upon by the Commission, and is more like *Beaver v. Benton County,* 66 Ark. App. 153, 991 S.W.2d 618 (1999). Appellants argue that *Ray* is inapplicable because, unlike the *Ray* claimant who could assist students during her break, appellee could not care for her ICU patients while en route to the cafeteria.

They further assert that the facts in the instant case are like those in *Beaver, supra.* There, we held that an employee was not performing employment services when she was injured while walking to a lunch buffet that was paid for by a meal allowance from her employer. In *Beaver,* we determined that the claimant, a child-support investigator who was attending a training seminar, was not performing employment services because she was on her lunch break, which was considered free time, and was not required to eat at a certain location or with her group. Appellants assert that the facts here are similar because appellee was allowed to take a break and for convenience, was allowed to go to the cafeteria, but was not required to leave the unit.

Appellants further assign error in the Commission's view that the hospital expected its employees to go to the cafeteria for food because going to the cafeteria was not necessary to appellee's job. To the contrary, they state that appellee would have advanced the hospital's interests by bringing her own breakfast so that she would not have left her work station to obtain food. Appellants argue that appellee's position is akin to the employee's claim in *McKinney v. Trane Co.,* 84 Ark. App. 424, 143 S.W.3d 581 (2004). In that case, we affirmed the denial of benefits where the employee was injured while jumping over tube sheeting to get a soda while taking a union-mandated paid smoke break. Pursuant to *Trane,* appellants assert that the fact that appellee was paid is irrelevant, and that her claim is similar to the *Trane* employee's claim, which we rejected, that he had a psychological need to smoke to refresh himself.

Finally, appellants urge that it is irrelevant that appellee was also getting food for her fellow nurses because her decision to do so was strictly a voluntary decision to carry out a personal errand, because each ICU nurse was permitted to obtain his or her own breakfast. *Coble v. Modern Bus. Sys.,* 62 Ark. App. 26, 966 S.W.2d 938 (1998) (holding a claimant was not performing employment services when she was injured in an automobile accident when she used her lunch break to buy pantyhose). Appellants raise a related

policy issue, expressing concern that affirming the Commission's decision will render any voluntary errand compensable as long as it occurs on the employer's premises and will discourage employers from allowing such voluntary accommodations as the hospital allowed in this case.

█ We are not persuaded that the authorities relied upon by appellants compel reversal; therefore, we hold that the Commission did not err in holding that appellee was performing employment services when she was injured. Appellants are correct in stating that the resolution of this case does not hinge on whether the injury occurred when the employee was on a *paid* break. Compare *Ray, supra,* and *Trane, supra.* To the contrary, no single factor determines whether an employee was performing employment services at the time an injury occurred. As this court has recognized, several factors are instructive when examining this issue, and include: 1) whether the accident occurs at a time, place, or under circumstances that facilitate or advance the employer's interests; 2) whether the accident occurs when the employee is engaged in activity necessarily required in order to perform work; 3) whether the activity engaged in when the accident occurs is an expected part of the employment; 4) whether the activity constitutes an interruption or departure, known by or permitted by the employer, either temporally or spatially, from work activities; 5) whether the employee is compensated during the time that the activity occurs; 6) whether the employer expects the worker to cease or return from permitted non-work activity in order to advance some employment objective. *Matlock v. Arkansas Blue Cross Blue Shield,* 74 Ark. App. 322, 339-40, 49 S.W.3d 126, 138-39 (2001).

█ Under either the *Matlock* factors or pursuant to *Ray, supra,* it is clear that appellee was performing employment services at the time she was injured. In particular, we find the first, fourth, and fifth *Matlock* factors instructive in this case. Applying the first and fifth *Matlock* factors, the accident here occurred under circumstances that facilitated or advanced the hospital's interests and occurred during a time for which appellee was compensated. Here, the hospital gleaned a benefit from appellee's act of going to get breakfast for her fellow nurses, not because of the immediate beneficial effect that it had on *appellee,* but due to the beneficial effect that it had on the ICU and the patients in the ICU — it reduced the number of times that the ICU unit was less-than fully

staffed. Accordingly, this case is analogous to *Ray, supra,* and *White, supra,* in that the employer was at all times receiving benefits from the time that the claimant was "on the clock."

As appellee argues, it is better for only one nurse to be out of the unit for a short period of time, than to rotate nurses out of the unit until each procures food. The latter method would mean that the ICU patients would be monitored by less than a complete staff for longer periods of time. An employer must expect that employees will require nourishment during a twelve-hour work period. The established routine, which the hospital permitted and which appellee was following when she was injured, advanced the hospital's interests by preserving patient care. Thus, while not solely dispositive, the fact that appellant was "on the clock" for a twelve-hour shift with no scheduled breaks is relevant in determining whether she was in the time and space boundaries of her employment when she was injured.

Further, it has never been the rule that an employee is entitled to recover for only those injuries that occur at her work station. As the fifth *Matlock* factor indicates, an employee may be compensated if the activity constitutes an interruption or departure from her work activities, if the activity is known or permitted by the employer. Therefore, the fact that appellee left her work station does not preclude a finding that she was performing employment services. *See Collins, supra* (holding a claimant was performing employment services where she left the production line to go to the rest room); *Wal-Mart Stores, Inc. v. Sands,* 80 Ark. App. 51, 91 S.W.3d 93 (2002) (holding a claimant was performing employment services when she returned to her locker to secure her personal items before returning to work after a break). Although appellee was not at her work station, she remained within the boundaries and scope of her employment, *i.e.,* inside of the hospital.

Moreover, appellants' argument that appellee was not advancing her employer's interest because she could have eaten breakfast before she came to work is both nonsensical and contrary to our law. It is the activity occurring at the time of the injury, not the activity preceding it, that is relevant to the question of whether a claimant was performing employment services. *Sands, supra.*

Accordingly, whatever activity preceded the injury, or could have preceded the injury, is also irrelevant.[2]

■ Appellants raise the specter that, if we affirm, employers will not allow such voluntary accommodations as the hospital made in this case because any voluntary activity permitted on the employer's premises will be compensable. We disagree. We do not hold that the routine of obtaining breakfast is an incidental activity that is inherently necessary for the performance of the primary employment activity and, therefore, is always compensable. Affirming on the facts of this case does not change the governing law that only compensates an injured worker if he or she is injured while directly or indirectly advancing the employer's interests. *Robinson, supra; Beaver, supra.*

Affirmed.

GLADWIN and BAKER, JJ., agree.

---

[2] In addition, to reverse using appellants' logic would require us to adopt a rule that varies depending on which meal was being purchased, because their argument might not hold true for an injury that occurred during a lunch or dinner break.