

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-17-258

| | |
|---|---|
| JESUS HERRERA-LARIOS (DECEASED)<br>APPELLANT<br><br>V.<br><br>EL CHICO 71, TRAVELERS INSURANCE COMPANY, AND DEATH AND PERMANENT TOTAL DISABILITY TRUST FUND<br>APPELLEES | **Opinion Delivered** November 29, 2017<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G203118]<br><br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Representatives for the decedent Jesus Herrera-Larios (Herrera) appeal the opinion of the Arkansas Workers' Compensation Commission (Commission) finding that Herrera was killed during and in the course and scope of his employment with El Chico 71, El Chico of America, and Consolidated Restaurant Operations (collectively El Chico). Based on this finding, the Commission further found that El Chico was protected by the Arkansas Workers' Compensation Act's (Act) exclusive-remedy provision of Arkansas Code Annotated section 11-9-105 (Repl. 2012). On appeal, Herrera's representatives contend that the Commission's compensability decision is not supported by substantial evidence and that the Act's exclusive-remedy provision does not apply. We affirm.

Herrera, an employee of El Chico, was tragically shot and killed during an armed robbery at the restaurant on April 15, 2012. The administrator of Herrera's estate filed a wrongful-death action against El Chico and other defendants. El Chico answered and

Cite as 2017 Ark. App. 650

affirmatively pled that Herrera's claim was covered under the Act; the Act was Herrera's only avenue for recovery against El Chico; and the civil action was barred by the exclusive-remedy provision found in Arkansas Code Annotated section 11-9-105(a).[1] In the civil action, El Chico also filed a motion for a stay to seek an employment determination from the Commission, which the circuit court granted.

Thereafter, Herrera's representatives filed a claim with the Commission. A prehearing order was entered wherein the parties stipulated that the Commission had jurisdiction of the claim; that Herrera was an employee of El Chico; that he was killed on April 15, 2012; and that Herrera's claim was accepted as compensable by El Chico.[2] The issue to be litigated was whether Herrera was killed in the course and scope of his employment giving the Commission exclusive jurisdiction.

A hearing was held before an administrative law judge (ALJ) on April 13, 2016. The only witness to testify at the hearing was Michael Easley. Easley stated that on April 15, 2012, he was the general manager of El Chico. Easley said that he supervised Herrera, who was a server at El Chico, and that Herrera arrived at El Chico for work on April 15 around 4:00 or 5:00 p.m. According to Easley, El Chico closed at 9:00 p.m.; however, Herrera's duties would

---

[1] The exclusive-remedy provision states:

> The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer[.]

Ark. Code Ann. § 11-9-105(a).

[2] It was later stipulated that El Chico paid, and Herrera's family accepted, funeral benefits totaling $6,000.

not have ended when the customers left the restaurant. Easley testified that Herrera would have been responsible for disassembling the salad-dressing and beverage carts, cleaning, sweeping, and restocking. Easley said that Herrera would have also been responsible for giving Easley a printout of his daily sales along with his cash before he clocked out. Easley stated that Herrera did not complete those tasks on April 15, 2012.

Easley stated that on the night in question, he was in the back of the restaurant preparing for closing when another El Chico employee, Tyrone Barbee, ran into the kitchen and reported that El Chico was being robbed. Easley said that customers from the dining area of the restaurant also ran into the kitchen. Easley, Barbee, and the customers went into the walk-in cooler and held the door shut. Easley testified that while inside the cooler he heard gunshots in the restaurant. After some time, Barbee left the cooler to see if the robbers had left. Barbee reported that the robbers were gone. Easley said that he and the restaurant customers left the cooler and saw Herrera on the floor inside the restaurant. He was dead. Easley stated that there were bullet holes in the door to the manager's office where the safe was located. He also said that $1,200 had been stolen from the safe. Easley testified that Kiywuan Perry and Zeckeya Perry were subsequently convicted of aggravated robbery of El Chico and capital murder for the shooting death of Herrera. The Perry brothers were also employees of El Chico; however, they were not on duty on April 15. Easley testified that he was not aware of any animosity between Herrera and the Perry brothers.

Tyrone Barbee testified at the criminal trials of Kiywuan Perry and Zeckeya Perry, and the transcripts of Barbee's testimony were introduced into evidence at the workers'-compensation hearing. Barbee testified that he was working on the night of April 15, 2012.

SLIP OPINION

He said that he stepped outside the restaurant for a break shortly before closing when the Perry brothers approached him.[3] Kiywuan Perry pointed a gun at Barbee and ordered him back inside El Chico. Barbee stated that Zeckeya Perry slipped and fell at which time Barbee ran toward the back of the restaurant and into the kitchen. Barbee testified that as he was running back to the kitchen, he ran past Herrera, who was behind the bar taking an order from a customer. Barbee said that was the last time he saw Herrera alive.[4] Barbee testified that he was not aware of any animosity between Herrera and the Perry brothers.

On June 30, 2016, the ALJ issued an opinion finding that the preponderance of the evidence established that Herrera was killed during and in the course and scope of his employment. The ALJ specifically found that at the time of Herrera's death, Herrera was an employee; he was last seen working behind the bar, serving a customer; he had not clocked out from his shift; he had job duties remaining before he would have clocked out; he was shot and killed inside the restaurant; there was no evidence of a personal dispute between Herrera and the Perry brothers; and the Perry brothers were charged with and convicted of aggravated robbery, which established their intent to rob the restaurant. The ALJ stated, "To summarize, the preponderance of the evidence shows that [Herrera's] death occurred within the time and space boundaries of his employment with El Chico, when he was carrying out the employer's purpose and advancing the employer's interests." The ALJ further found that El Chico was "protected by the exclusive remedy provision of the Arkansas Workers' Compensation Act."

---

[3]Barbee testified that the Perry brothers were in disguise, wearing hoodies, bandanas, and sunglasses; however, Barbee was able to identify Kiywuan Perry's voice.

[4]No one who witnessed the shooting of Herrera has testified.

Herrera's representatives appealed. On February 23, 2017, the Commission affirmed and adopted the ALJ's opinion. This appeal followed. Herrera's representatives challenge the Commission's compensability decision, arguing that substantial evidence does not support the finding that Herrera's death arose out of and in the course of his employment.[5]

When reviewing a decision from the Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirms that decision if it is supported by substantial evidence. *Swaim v. Wal-Mart Assocs., Inc.*, 91 Ark. App. 120, 122–23, 208 S.W.3d 837, 839 (2005). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* at 123, 208 S.W.3d at 839. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* at 123, 208 S.W.3d at 839. When the Commission denies a claim because of the claimant's failure to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm

---

[5]The Death and Permanent Total Disability Trust Fund (Fund) argues that we need not address the issue of compensability because Herrera's representatives stipulated to the jurisdiction of the Commission and that he received workers'-compensation (funeral) benefits; therefore, he elected Herrera's remedy in the workers'-compensation forum, excluded Herrera from tort-law jurisdiction, and has violated the inconsistent-position doctrine by agreeing to these workers'-compensation stipulations and maintaining his civil tort action. We cannot address these arguments because the Commission failed to rule on them. *St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, at 6–7, 422 S.W.3d 171, 175 (stating that in order to preserve an issue for appellate review in a workers'-compensation case, it is a party's responsibility to present the issue to the Commission *and* obtain a ruling) (emphasis added). Therefore, the Fund's arguments are not preserved for appeal. *See also City of Pine Bluff v. Southern States Police Benev. Ass'n, Inc.,* 373 Ark. 573, 579, 285 S.W.3d 217, 222 (2008) (stating that various arguments of the appellant and appellees were not preserved for appeal because the circuit court did not rule on them).

SLIP OPINION

the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.*, 208 S.W.3d at 839.

A compensable injury is an accidental injury causing internal or external harm that arises out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii). The Act does not define the phrase "in the course of employment" or the term "employment services." *Jivan v. Economy Inn & Suites*, 370 Ark. 414, 417, 260 S.W.3d 281, 284 (2007). Our case law does. An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Ark. Methodist Hosp. v. Hampton*, 90 Ark. App. 288, 294, 205 S.W.3d 848, 853 (2005). The test for determining whether an employee was injured while performing employment services is the same as the test for determining whether an injury occurred out of and in the course of employment: whether the injury occurred within the time and space boundaries of the employment when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id.*, 205 S.W.3d at 853. Thus, the critical issue is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Id.*, 205 S.W.3d at 853.

Additionally, we have held that injuries resulting from an assault are compensable when the assault is causally related to the employment, but such injuries are not compensable when the assault arises out of purely personal reasons. *San Antonio Shoes v. Beaty*, 28 Ark. App. 201, 203, 771 S.W.2d 802, 803 (1989) (citing *Daggs v. Garrison Furniture Co.*, 250 Ark. 197, 464 S.W.2d

593 (1971); *Townsend Paneling v. Butler*, 247 Ark. 818, 448 S.W.2d 347 (1969); *Bagwell v. Falcon Jet Corp.*, 8 Ark. App. 192, 649 S.W.2d 841 (1983)); *Pigg v. Auto Shack*, 27 Ark. App. 42, 44, 766 S.W.2d 36, 37 (1989).

With these standards in mind, we hold that substantial evidence supports the Commission's finding that Herrera was killed during and in the course and scope of his employment. In fact, all of the evidence in this case demonstrates that Herrera was carrying out his employer's purpose and advancing its interests at the time of his death. It was stipulated that at the time of Herrera's death, he was an El Chico employee. The evidence demonstrated that he was at work and on duty at the time of the robbery. He was last seen working behind the bar, serving a customer. He had not clocked out from his shift, and he had job duties remaining before he would have clocked out for the night. Further, he was shot and killed inside the restaurant. The evidence also established that the Perry brothers' motive was to rob El Chico, which illustrates a causal connection between the robbery/murder and Herrera's employment. Finally, there is no evidence of a personal dispute between Herrera and the Perrys. Therefore, we affirm the Commission's compensability finding. Accordingly, we also affirm the Commission's finding that El Chico is protected by the exclusive-remedy provision of Arkansas Code Annotated section 11-9-105.

Herrera's representatives ask this court to apply the increased-risk and/or the positional-risk doctrines and hold that Herrera's death was not compensable. Under the doctrine of increased risk, injuries are compensable if the employment exposed the employee to a greater degree of risk than other members of the general public in the same vicinity. *Odd Jobs & More v. Reid*, 2011 Ark. App. 450, at 6–7, 384 S.W.3d 630, 633 (citing *Jivan*, 370 Ark. at

418, 260 S.W.3d at 285). Under the positional-risk doctrine, an injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured. *Pigg*, 27 Ark. App. at 44–45, 766 S.W.2d at 37–38 (citing 1 Larson, *Workmen's Compensation Law* § 6.50 (1985)).[6] The increased-risk and positional-risk doctrines traditionally broaden the range of compensability and are typically employed by claimants who would—without the application of the doctrines—not meet the definition of a compensable injury. There is no precedent for applying these doctrines in reverse—to exclude an otherwise compensable injury from compensability.

Nevertheless, we cannot reach the merits of this argument. The ALJ—after finding Herrera's claim compensable because he was killed during and in the course and scope of his employment—included the following conclusory statement at the end of her opinion: "[T]he evidence before me establishes that this claim is a compensable work-related death claim pursuant to both the Positional Risk Doctrine and the Increased Risk Doctrine." There are no specific findings to support that conclusion or to allow this court to carry out a meaningful review of this particular issue; however, such findings are not required in this case because we have affirmed the Commission's compensability finding (without the application of the doctrines) as set forth above.

Affirmed.

KLAPPENBACH and WHITEAKER, JJ., agree.

---

[6]Our supreme court has not expressly adopted the positional-risk doctrine. *Jivan*, 370 Ark. at 418 n.1, 260 S.W.3d at 285 n.1.

*Hancock Law Firm*, by: *Charles D. Hancock*, for appellant.

*David L. Pake*, for appellee Death & Permanent Total Disability Trust Fund.

*Friday, Eldredge & Clark, LLP*, by: *James M. Simpson*, *Guy Alton Wade*, and *Phillip M. Brick, Jr.*, for appellees El Chico 71, Consolidated Restaurant Operations, Inc., El Chico Restaurants of America, Inc., and Michael Easley.