Cite as 2019 Ark. App. 511

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-19-218

| | |
|---|---|
| UNIVERSITY OF CENTRAL ARKANSAS AND PUBLIC EMPLOYEE CLAIMS DIVISION APPELLANTS | **Opinion Delivered:** November 6, 2019<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G707294] |
| V. | |
| ELIZABETH SRITE APPELLEE | AFFIRMED |

## BART F. VIRDEN, Judge

Appellee Elizabeth Srite was employed by appellant University of Central Arkansas (UCA) on February 13, 2017, when she injured her lower back while lifting a box. UCA and appellant Public Employee Claims Division initially accepted the claim as "medical only" but later controverted Srite's claim. An administrative law judge (ALJ) found (1) that Srite notified her employer of her injury on May 5, 2017; (2) that Srite had proved that all the treatment she had received was reasonable and necessary and that appellants were responsible for treatment that occurred on and after May 5; (3) that Srite had proved entitlement to additional medical treatment of her injury as recommended by Dr. Cassatt, as well as ongoing prescription pain medication; (4) that Srite had proved that she is entitled to temporary total-disability (TTD) benefits from October 18 through November 22, 2017; and (5) that Srite had proved that her attorney was entitled to a controverted fee on the

indemnity benefits awarded. Appellants appealed the ALJ's decision to the Arkansas Workers' Compensation Commission (Commission), which affirmed and adopted the ALJ's opinion.[1]

On appeal to this court, appellants argue that the Commission erred in finding (1) that appellants are liable for medical treatment that Srite underwent on her own after she had received the Form AR–N notice because that treatment was unauthorized; (2) that Srite was entitled to additional medical treatment, including ongoing prescription pain medication, when she had been treating her lower back with pain medication for years; and (3) that Srite was entitled to TTD benefits from October 18 through November 22 because she chose to take herself off work despite being accommodated by her employer, and the only doctor who had taken her off work was an unauthorized physician. We affirm.

## I. *Hearing Testimony*

Srite testified that she began working for UCA in April 2007. At the time of her injury, she was working in the Office of the Registrar as an administrative specialist assisting students with transcripts, graduation applications, diplomas, and commencement ceremonies. On February 13, 2017, while moving offices, Srite lifted a box, felt a pain in her back, and fell to the floor with the box. No one witnessed the incident. She continued with her duties that day but left early because she did not feel well. Srite said that the pain was initially in her back but that it later spread down her left leg.

---

[1]Arkansas law permits the Commission to adopt the ALJ's opinion. *Hargis v. Lovett*, 2018 Ark. App. 227, 547 S.W.3d 724. When the Commission adopts the ALJ's opinion, it makes the ALJ's findings and conclusions its findings and conclusions, and for the purpose of appellate review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id*.

The record shows that Srite went to the Conway Regional Health System emergency room on February 13 where she was diagnosed with a foot contusion and low-back strain. She was referred to Dr. Billy McBay. She went back to the ER on February 19 with abdominal pain and calculus of the ureter. Srite said that she was suffering from kidney stones, which she thought had been the source of her back pain. Records show that she was treated with a "stent/surgery" for the kidney stones.

Srite eventually called a nurse because her kidney stones, which had been on her right side, had resolved, but her back and left leg were still hurting. She was sent to the Student Health Clinic on May 5, 2017, where she was seen by Dr. Randy Pastor. Srite reported low-back pain and pain shooting down her left leg from a work-related injury. She signed the Form AR-N on May 8. Dr. Pastor later received the x-rays that had been taken when Srite went to the ER, and he noted that the x-rays were normal. Dr. Pastor recommended physical therapy at Ortho Rehab & Specialty Centers. Srite said that she had about six physical-therapy sessions but that they did not help.

On August 10, Srite saw her family doctor, Dr. Bill B. Lawrence, for chronic low-back pain, and she requested refills of her pain medication. Dr. Lawrence referred her to Dr. William E. Ackerman III. Dr. Ackerman ordered an MRI of Srite's lumbar spine, which was performed September 5. On September 20, Srite saw Trent Tappan, P.A., at Arkansas Specialty Orthopaedics, who noted that Srite had low-back pain radiating down the back of her left leg. The radiology report noted "multilevel degenerative changes most significant at L3-4 and L4-5" and "foraminal stenosis most severe on the left at L4-5." Tappan conferred with Dr. Wayne Bruffett, who agreed with Tappan's recommendation that Srite

3

consider injections given by Dr. Ackerman. On September 25, Dr. Ackerman gave Srite a sitting/standing desk prescription to give to UCA. He also refilled her pain medication. Dr. Ackerman advised Srite to remain off work from October 18 through November 2, and he later extended it through November 22. Because of her worsening back pain, Dr. Bruffett directed that she have a CT scan of her lumbar spine at St. Vincent Health System on November 27. Dr. Bruffett noted degenerative changes and suspected "a prior compressive injury in the anterior superior endplate of T12," which likely represented an old healed injury. In a follow-up office visit on November 27, Tappan noted that Srite had a transforaminal steroid injection at L4–5 but that it had not brought her much relief. He and Dr. Bruffett did not recommend surgery, and Tappan noted that Srite wanted to revisit Dr. Ackerman about more injections, which he thought was reasonable.

On May 2, 2018, appellants sent Srite to Dr. Michael Cassat at the UAMS Orthopedic Clinic for an independent medical evaluation (IME). He diagnosed chronic bilateral low-back pain with left-sided sciatica. He wrote:

> Overall the patient has a quite complex history. She has chronic degenerative changes in her lumbar spine that are likely responsible for her axial type back pain. Her radicular leg pain could be explained from her chronic disc changes at L3/4 and L4/5. Although she reports increased pain since her work-related injury, I cannot identify any acute findings that were not previously described prior to her injury at work. She has self-reported chronic axial and radicular pain for years, and has been taking opiates with poor control per her self-rated pain scores. Her previous MRI described in her pre-injury clinic notes is unavailable for my review personally. I cannot compare the changes seen in her L3/4 and L4/5 discs to this to determine if there was any worsening that would have caused new nerve root compression. As such I cannot completely exclude an acute worsening of a chronic disc injury being responsible for her radicular leg pain.
>
> As far as future care recommendations, I have recommended that she see interventional pain management, undergo medial branch blocks for her facet arthropathy that is likely the cause of axial back pain. Would also recommend that

she have a better quality lumbar spine MRI to evaluate for far lateral stenosis at L3/4 on the left. Her previous injections have been at L4/5. If this is confirm[ed] then I would recommend a transforaminal epidural steroid injection on the left at L3/4 if her leg pain became the majority of her pain. Currently she reports 90% of her pain is axial, 10% is radicular left leg pain.

Srite admitted that she had a history of back problems prior to her work-related injury. She was involved in a motor-vehicle accident in 2004 and suffered an injury to her back for which she was prescribed pain medication. She confirmed that she had been taking pain medication from at least 2007 through 2017. According to Srite, she had never had back problems that lasted this long and involved her left leg. Srite said that, although she had pain in her left leg after a drive to Arizona in July 2012, that was an isolated incident and that the pain she is currently having is new.

Srite stated that she continued to work after she had six physical-therapy sessions but that she had difficulty keeping up at work and that her pain was so bad she could not focus on her work. She said that she could not sit or stand very long and that alternating the positions did not make any difference. Srite testified that, although Dr. Ackerman had prescribed a sitting/standing desk, she did not give the prescription to UCA because she had been told by someone in the purchasing department that UCA would not buy the desk. Srite said that the difficulty concentrating, plus the worsening of her symptoms, caused her to be taken off work in October. She said that she applied for the Arkansas Teachers Retirement System disability benefits and had received one check. She said that she was in the process of appealing a decision on long-term Social Security disability benefits. Srite said that she had not worked anywhere since October. Srite said that initially UCA was not accommodating her but that, toward the end of her employment, UCA began

5

accommodating her and even offered her a different job. Srite said that she did not think she could do any job at UCA or anywhere with an accommodation of any kind.

## II. *The Commission's Decision*

The Commission found that Srite first reported her work-related injury to her employer on May 5, 2017, the date she went to the Student Health Clinic at UCA. No one disputes that this was the date of notice.

The Commission concluded that appellants are responsible for all the reasonable and necessary treatment Srite obtained on and after May 5. The Commission also found that Srite was entitled to additional medical treatment recommended by Dr. Cassat in his May 2, 2018 IME, along with ongoing prescription pain medication. The Commission pointed out that, although Srite had lumbar issues prior to February 13, 2017, appellants had stipulated that Srite sustained a compensable lower-back injury on that date. The Commission then credited Dr. Cassat's statement in his report that he "cannot completely exclude an acute worsening of a chronic disc injury being responsible for her radicular leg pain." The Commission found that Dr. Cassat's statement, coupled with Srite's testimony and medical records that show her condition had worsened since her stipulated compensable injury, led to its conclusion that the treatment Srite sought was causally related to her lower-back injury.

As for TTD benefits, the Commission found that Srite's job was not physically demanding and that she had continued to work at her job until October 18, 2017, when she did not return to work. The Commission noted that Dr. Ackerman had taken Srite off work from October 18 through November 22 but that no other doctor had taken her off

6

work. The Commission found that the evidence did not show that Srite was totally incapacitated from earning a wage for any period other than from October 18 through November 22.

### III. *Standard of Review*

The standard of review in workers'-compensation cases is well settled. On appeal, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Univ. of Ark. at Pine Bluff v. Hopkins*, 2018 Ark. App. 578, 561 S.W.3d 781. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.* Questions regarding the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Evans v. Bemis Co., Inc.*, 2010 Ark. App. 65, 374 S.W.3d 51.

### IV. *Discussion*

#### A. Medical Treatment On and After May 5, 2017

The employer shall promptly provide for an injured employee such medical services and medicine as may be reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Supp. 2017). Employers are liable only for such treatment and services as are deemed necessary for the treatment of the claimant's injuries. The claimant must prove by a preponderance of the evidence that medical treatment is reasonable and necessary for the treatment of a compensable injury. *Ark. Dep't of Parks &*

7

*Tourism v. Price*, 2016 Ark. App. 109, 483 S.W.3d 320. What constitutes reasonable and necessary medical treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Ayers v. Tyson Poultry, Inc.*, 2018 Ark. App. 206, 547 S.W.3d 123.

Appellants argue that Srite was provided treatment at their direction but that Srite then went to doctors on her own—even after signing the Form AR–N.[2] Appellants contend that they are not responsible for the unauthorized treatment Srite obtained because she failed to follow the statutory rules for a change of physician.

The employer has the right to choose the initial treating physician. Ark. Code Ann. § 11-9-508(d)(5)(A); Ark. Code Ann. § 11-9-514(a)(3)(i). An injured employee, however, has the right to petition the Commission for a one-time change of physician. Ark. Code Ann. § 11-9-514(a)(3)(ii)–(iii). An employer is generally not liable for a new physician's services if the injured employee fails to follow the statutory rules for a change of physician. Ark. Code Ann. § 11-9-514(b). Any unauthorized medical expense incurred after the employee has received a copy of the notice shall not be the responsibility of the employer. Ark. Code Ann. § 11-9-514(c)(3).

Here, appellants sent Srite to Dr. Pastor for treatment and later to Dr. Cassat. Srite also saw Drs. Lawrence, Ackerman, McBay, and Bruffett without ever requesting a change of physician. Appellants, however, did not raise this argument below. In order to preserve an issue for appellate review in a workers'-compensation case, it is a party's responsibility to

---

[2]The Form AR–N provides that "[t]reatment or services furnished or prescribed by any physician other than the ones selected according to the provisions below, except emergency treatment, shall be at the claimant's/employee's expense."

8

present the issue to the Commission and obtain a ruling. *Herrera-Larios v. El Chico 71*, 2017 Ark. App. 650, 535 S.W.3d 305; *St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, 422 S.W.3d 171; *see also Price, supra*. Appellants cite *Butler v. Lake Hamilton School District*, 2013 Ark. App. 703, 430 S.W.3d 831, and *Byars Construction Co. v. Byars*, 72 Ark. App. 158, 34 S.W.3d 797 (2000), but it is clear in those cases that the issue of authorization was presented to and ruled on by the Commission. Because appellants' argument is not preserved, we do not address it.

## B. Additional Medical Treatment

A claimant may be entitled to additional medical treatment after the healing period has ended if said treatment is geared toward management of the injury. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004). Such services can include diagnosing the nature and extent of the compensable injury; reducing or alleviating symptoms resulting from the compensable injury; maintaining the level of healing achieved; or preventing further deterioration of the damage produced by the compensable injury. *Jordan v. Tyson Foods, Inc.*, 51 Ark. App. 100, 911 S.W.2d 593 (1995). A claimant is not required to furnish objective medical evidence of his or her continued need for medical treatment. *Castleberry v. Elite Lamp Co.*, 69 Ark. App. 359, 13 S.W.3d 211 (2000). The claimant must prove, however, that his or her continued need for treatment is causally related to the compensable injury. *Pulaski Cty. Special Sch. Dist. v. Tenner*, 2013 Ark. App. 569.

Appellants argue that the Commission's reason for awarding ongoing pain management to Srite is simply that, if Dr. Cassat recommended pain management, it must be due to her work-related injury. Appellants contend that this is illogical, considering that

9

Srite's pain management had been ongoing for years before the work-related injury or notice of the injury. They argue that it is also illogical to find that, because Dr. Cassat did not completely exclude acute worsening of a chronic disc injury as the cause of her radicular leg pain, Srite's work-related injury must be the cause of her pain.

A preexisting medical condition does not defeat a claim if the compensable injury aggravated, accelerated, or combined with the preexisting condition to produce the disability for which benefits are sought. *Tenner, supra*. An employer takes an employee as the employer finds him or her, and employment circumstances that aggravate preexisting conditions are compensable. *Webb v. Wal-Mart Assocs., Inc.*, 2018 Ark. App. 627, 567 S.W.3d 86. An aggravation of a preexisting noncompensable condition by a compensable injury itself is compensable. *Id.* An aggravation, being a new injury with an independent cause, must meet the requirements for a compensable injury. *Id.* Here, however, the parties stipulated that Srite sustained a compensable injury on February 13.

The Commission did not rely solely on Dr. Cassat's statement. It also considered Srite's testimony and the medical records. The Commission found credible Srite's testimony that the pain she experienced after lifting the box at work was different from her previous back and leg pain. Her credible testimony, together with the medical records documenting a worsening of symptoms, was sufficient to prove a causal connection between Srite's continued need for treatment and the work-related injury. Dr. Cassat, the doctor chosen by appellants, recommended further testing and perhaps steroid injections to treat Srite's low-back and left-leg pain. We conclude that there is substantial evidence to support the Commission's decision that Srite was entitled to additional medical treatment.

10

## C. TTD Benefits

A temporary total disability occurs when a claimant is within his or her healing period and suffers a total incapacity to earn wages. *Hopkins*, *supra*. If, during the period that the body is healing, the employee is unable to perform remunerative labor with reasonable consistency and without pain and discomfort, his or her temporary disability is deemed total. *Farmers Coop. v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002).

Appellants argue that the Commission awarded benefits solely on the basis of Dr. Ackerman's records. Appellants contend that the treatment with Dr. Ackerman was unauthorized and that it was pain management as opposed to treatment of an underlying condition—the very same pain management Srite had undergone for years before her February 2017 injury. Appellants point out that Srite had not been taken off work for her back injury by any authorized treating physician—Dr. Pastor or Dr. Cassat—and that even Tappan at the orthopedic clinic, whom Srite had gone to on her own, had not taken her off work. Appellants argue that Srite had worked between February 13 and October 18 and that her reason for not working after October 18 was that she had been experiencing pain and the effects of pain management, both of which she had been experiencing for years.

Again, appellants did not raise below the issue of whether Dr. Ackerman was an authorized treating physician; therefore, we do not address that argument. *Herrera-Larios*, *supra*. Although Srite continued to work after the injury, she said that her pain had worsened and spread into her left leg down to her foot. She also said that she could no longer concentrate on her work and that alternating sitting and standing positions did not help. Dr. Ackerman took Srite off work for a short period. The Commission could conclude from

11

Srite's testimony and the fact that Dr. Ackerman took her off work that she was suffering total disability, albeit temporary. We hold that there was substantial evidence to support the award of TTD benefits.

Affirmed.

ABRAMSON, J., agrees.

HIXSON, J., concurs.

**KENNETH S. HIXSON, Judge, concurring**.  Due to unique circumstances that exist within this workers'-compensation claim, I write this concurrence to draw attention to these circumstances to minimize the precedential impact of this opinion.  The claim was affirmed primarily due to our standard of review.  If this opinion is not read closely, it could be misinterpreted, which could confuse the burden of proof for compensability of future claims.  As stated in the majority opinion, despite years of the same or similar medical conditions and symptoms experienced by the claimant, the employer and the insurance carrier elected to *stipulate* that the alleged injury herein was compensable.  As such, our opinion does not review or examine the compensability of the alleged injury.  Similarly, the claimant admittedly was seen by several physicians who were not authorized to treat the claimant.  The employer and the insurance carrier elected not to raise this issue below; therefore, that issue was not preserved for appeal.  For these two reasons, and maybe others, the affirmance of this award of benefits as described in the majority opinion may best be described as, perhaps, an anomaly.

*Charles H. McLemore Jr.*, for appellants.

*Gary Davis*, for appellee.