Cite as 2022 Ark. App. 179

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-295

SOUTHERN TIRE MART, LLC; AND
LIBERTY MUTUAL INSURANCE CO.,
TPA

APPELLANTS

V.

JOSE PEREZ

APPELLEE

Opinion Delivered April 20, 2022

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. G708197]

AFFIRMED

## KENNETH S. HIXSON, Judge

Appellants Southern Tire Mart, LLC (Southern Tire); and Liberty Mutual Insurance

Co., TPA (Liberty) appeal from a unanimous May 27, 2021, opinion by the Arkansas

Workers' Compensation Commission (Commission) reversing the decision of an

administrative law judge (ALJ) and awarding additional medical treatment in the form of a

Superion procedure to appellee Jose Perez. On appeal, appellants contend that substantial

evidence does not support the Commission's decision that the recommended Superion

procedure is reasonable and necessary in connection with appellee's compensable injury.

We affirm.

## I. *Relevant Facts*

Relevant to this appeal, the parties stipulated that appellee sustained a compensable

work-related injury on October 13, 2017, to his back after appellee had lifted a tire while on

a service call during his employment with Southern Tire. Appellee was initially treated on the same day at White County Medical Center. The lumbar spine x-rays showed no fracture or subluxation. Appellee was diagnosed with back pain and sciatica; prescribed Valium, Norco, and a Medrol Dosepak; and discharged home in a wheelchair. Thereafter, appellee was seen at Searcy-Sherwood Urgent Care on October 23, 2017, where he was assessed with "[s]prain of ligaments of lumbar spine." He was referred for physical therapy and placed on several restrictions, including that he should not lift over five pounds at any time and that he should not twist, bend, stoop, or strain. Appellee returned to Searcy-Sherwood Urgent Care on October 31, 2017, for low back pain, and an MRI of appellee's sacrum and lumbar spine was taken. The MRI of appellee's sacrum revealed a grade one muscle strain involving the gluteus maximus. The MRI of appellee's lumbar spine revealed the following findings and impressions:

FINDINGS:

. . . .

L3-4: The disc at this level is normal. *There is mild ligamentum flavum hypertrophy noted.*

L4-5: A small focal central protrusion is seen at this level with a central annular tear. There is no mass effect on the adjacent nerve roots. The facet joints show mild degeneration.

. . . .

IMPRESSION:

1. Annular tear within a central protrusion involving the L4-L5 disc without mass affect on the nerve roots.

2.  Mild Facet degenerative changes are seen throughout the lumbar spine.  There is no evidence canal or neural foraminal stenosis noted.

(Emphasis added.)

Appellee was subsequently seen at the Arkansas Spine and Pain Center and began receiving treatment from Dr. Amir Qureshi and Dr. Julio Olaya for low back pain.  On November 27, 2017, appellee was evaluated by Dr. Qureshi.  The report mentioned that appellee had pain in his lower back and shoulders.  Dr. Qureshi noted that there was "[p]alpation of the lumbar facet revealed tenderness on both sides at L3-S1 region.  There is pain noted over the lumbar intervertebral spaces."  Appellee was diagnosed with myofascial pain syndrome, bilateral sacroiliitis, and lumbar degenerative disc disease.

Dr. Qureshi noted on January 4, 2018, that appellee would be referred to neurosurgery for a surgical opinion, as he had an annular tear in his disc at L4-5 and had pain directly over that general area.  On February 5, 2018, Dr. Olaya specifically noted the following regarding appellee's spine evaluation:

> Lumbar Spine:  Inspection of the lumbar spine reveals no scoliosis.  *Palpation of the lumbar facet reveals tenderness on both the sides at L3-S1 region.  There is pain noted over the lumbar intervertebral spaces (discs) on palpation.*  Palpation of the bilateral sacroiliac joint area reveals right and left sided pain.  Anterior lumbar flexion causes pain.  Extension of lumbar spine is noted to be 15 degrees.  There is pain noted with lumbar extension.  Left lateral flexion causes pain.  Right lateral flexion reveals pain.  There are no palpable trigger points in the muscles.

(Emphasis added.)  Dr. Olaya diagnosed appellee with low back pain, myofascial pain syndrome, bilateral sacroiliitis, and lumbar degenerative disc disease.  Dr. Olaya also

3

performed some trigger point injections. On April 5, 2018, the claimant received a lumbar epidural steroid injection at the Central Arkansas Surgery Center.

On July 26, 2018, the claimant saw Dr. Carlos Roman. Dr. Roman noted that appellee had a lumbar sprain and was not a surgical candidate. He opined that appellee had been overmedicated and had developed "some habitation to [his opioid medication]." He finally noted that he "may look at doing some gluteal bursa injections when he comes back, but he does not need chronic treatment for this injury for a lumbar sprain." Dr. Roman diagnosed appellee with low back pain, lumbar strain, and opiate dependency.

Appellee continued to follow up with Dr. Olaya and received several treatments for his low back pain. Appellee received a bilateral sacroiliac joint injection on November 1, 2018, and received lumbar epidural steroid injections on February 14 and 28, 2019. Approximately seven months later, on September 5 and 12, 2019, appellee received a lumbar facet medial branch block, and on October 24 and 31, 2019, and May 7 and 14, 2020, appellee received caudal epidural steroid injections. Also, on May 14, 2020, appellee received another lumbar facet medial branch block.

On June 5, 2020, a second MRI was taken of appellee's lumbar spine, and it revealed the following pertinent findings and impressions:

L3-4: *Shallow disc osteophyte in the subarticular to foraminal zones with minimal right neural foraminal stenosis.* No disc protrusion or spinal canal stenosis.

L4-5: Minimal concentric disc bulge. Dorsal annular fissure. No spinal canal or neural foraminal stenosis.

L5-S1: No disc protrusion, spinal canal stenosis, or neural foraminal stenosis.

IMPRESSION:

1. Minimal spondylosis without spinal canal stenosis. Minimal right neural foraminal stenosis is demonstrated at L3-4.

2. Left hemisacralization of L5 with pseudoarthrosis and likely congenital, mild L5-S1 disc space narrowing.

3. Mild dextroscoliosis.

(Emphasis added.)

Thereafter, appellee saw Dr. Olaya for a follow-up visit on July 15, 2020. It was at this visit that Dr. Olaya included the diagnosis of chronic pain syndrome in addition to low back pain; other spondylosis, lumbar region; lumbar radiculopathy; muscle spasm; spinal enthesopathy; lumbar spondylosis; intervertebral disc disorder with radiculopathy of lumbar region; other spondylosis with radiculopathy, lumbar region; bilateral sacroiliitis; lumbar degenerative disc disease; and encounter for long-term (current) use of other medications. He further noted that he had scheduled appellee for a "L3-4 Superion" after reviewing appellee's latest lumbar MRI. He stated, "Based on his MRI report patient developed an osteophyte at L3-4 and is a candidate for L3-4 Superion. Patient has tried conservative treatment."

On October 14, 2020, appellee's counsel sent Dr. Olaya a letter informing him that a hearing had been scheduled before the ALJ regarding his recommendation that appellee undergo a Superion procedure. Counsel specifically requested that Dr. Olaya provide a

"more detailed explanation regarding what is involved and why, in particular, this procedure is being recommended for Mr. Perez and how it is related to his job injury 10/13/17."

Dr. Olaya responded to counsel's request with a letter dated November 26, 2020, which stated the following in relevant part:

> In response to your first question, Mr. Jose Perez (DOB 6/25/82), needs Superion because it is a proven technique that is very effective *in the treatment of foraminal stenosis, ligamentum flavum hypertrophy and spinal stenosis.* One way to prove that is the fact that Superion is covered by Medicare and Medicaid. These two very respected government institutions have vetted this procedure carefully and concluded that this medical approach works. I can attest that this procedure is effective based on the results that I have had with my patients. I had the privilege of performing the first Superion procedure in the state of Arkansas on April 13, 2018. Since then, I have performed this procedure on 93 separate occasions with positive results correcting the painful neuropathic pain these conditions trigger.
>
> In short, the result of this technique is nothing short of effective and wonderful, dramatically changing my patients' lives. I can personally attest to the effectiveness of this procedure as I have undergone a Superion procedure myself and have even recommended that my 84-year-old father undergo it. His procedure was without issue and now walks without a cane, going up and down stairs that used to limit his movement throughout the world.
>
> Regarding your second question, Mr. Jose Perez had an accident during his working hours when he and a co-worker were carrying a very heavy truck tire. His co-worker lost the grip of the tire and Mr. Perez had to hold the tire by himself. Shortly after, he felt a "pop" in his lumbar area. This caused the injury that he has been suffering with ever since.
>
> We have been treating him at Arkansas Spine and Pain since November 2017. Mr. Perez has been the subject of multiple different spine intervention treatments including physical therapy and pain medications in an attempt to improve his quality of life, decrease his pain and hopefully bring him back to being a productive member of the society. Unfortunately, nothing has had a definitive positive result. Perez has had the misfortune to present a very difficult case because the radiographic evidence is not clear and definitive and only shows a mild injury which can be very confusing and puzzling, adhering to the old saying used by the radiologists: "We can have terrible radiographical imaging (in this case a lumbar MRI), that could make us think

6

that the patient is in excruciating pain and limited to have an appropriate mobility and very surprising the patient has none or minimal pain and symptoms, or we could have a very mild lumbar MRI report with a patient suffering terrible aches and pains that would limit him or her to perform his daily living activities."

*The last lumbar MRI dated 6/05/2020, showed minimal spondylosis, minimal right neural foraminal stenosis and mild degenerative changes at L5-S1.*

These changes might require an L5-S1 percutaneous discectomy depending on the outcome of the Superion procedure. Both procedures that I am suggesting are minimally invasive and could be very helpful in controlling Mr. Jose Perez' pain and allowing him to live a normal, productive, and fulfilling life.

What does Superion do?

Basically, it will play the role of a little "carjack" that will open the space of the nerves that are pinched that trigger neuropathic pain. It will restore the natural space that those nerves need to efficiently transmit sensation and mobility without pain.

(Emphasis added.)

According to an October 19, 2020, prehearing order, the parties stipulated that appellee had sustained a compensable injury on October 13, 2017. However, the parties disputed whether appellee was entitled to receive additional medical treatment in the form of a Superion procedure as recommended by Dr. Olaya. Appellee contended that the treatment was reasonable and necessary, and appellants contended that the treatment was "not reasonable and necessary and is experimental." A hearing was held before the ALJ on December 8, 2020. The above medical evidence was admitted, and appellee was the sole witness.

Appellee testified that he was forty-eight years old at the time of the hearing and has a fourth-grade education obtained in Mexico. He admitted that appellants had paid some

benefits due to his compensable work-related injury and that he had been receiving treatment with Dr. Olaya. Appellee testified that he had been having pain in his lower back and had been laid off from his work. He explained that he had been having pain every single day since his injury and had trouble sleeping. He stated that he was hoping that the recommended surgical treatment would relieve his pain so that he could work and provide for his family. On cross-examination, he admitted that an ALJ awarded him pain management in the form of medications and injections after a previous contested hearing on January 10, 2019. However, appellee testified that the injections were not helping him. He explained that the pain was getting worse. When pressed about the specifics of the MRI findings and Dr. Olaya's opinion, appellee testified that he was not a doctor and that Dr. Olaya was the right person to ask regarding the rationale for his opinion. On redirect examination, appellee testified the location and type of pain he was experiencing was the same as it had been in 2017 when he was injured. Of particular importance, there was no medical evidence except the medical records and Dr. Olaya's letter of explanation dated November 26, 2020.

The ALJ filed his opinion on January 26, 2021, wherein he found that appellee had "failed to prove by a preponderance of the credible evidence that the medical treatment which he requested and that consists of the 'superion procedure' is causally related to and reasonably necessary for the treatment of the compensable work-related back injury." Appellee appealed the ALJ's decision, and on May 27, 2021, the Commission unanimously reversed the ALJ and made the following relevant findings:

Dr. Olaya, who is the claimant's authorized treating physician, has recommended that the claimant undergo a Superion procedure. In a letter written to the claimant's counsel, Dr. Olaya explained that, based on his experience treating other patients with this procedure, he believes the claimant could see a reduction in pain. Additionally, Dr. Olaya explained that the Superion procedure is recommended because the claimant has tried other conservative treatment that has proven to be unsuccessful and the Superion procedure is a "proven technique that is very effective in the treatment of foraminal stenosis, ligamentum flavum hypertrophy and spinal stenosis." Dr. Olaya also attributed the need for this procedure to claimant's workplace accident. Therefore, we find that the treatment recommended by Dr. Olaya is reasonable and necessary treatment for managing the claimant's pain.

Therefore, for the foregoing reasons, the Full Commission finds that the claimant proved by a preponderance of the evidence that he is entitled to additional medical treatment in the form of a Superion procedure.

This appeal followed.

## II. *Standard of Review*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson*

9

*v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock, supra.*

## III. *Additional Medical Treatment*

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." A claimant may be entitled to additional medical treatment after the healing period has ended if said treatment is geared toward management of the injury. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004). Such services can include diagnosing the nature and extent of the compensable injury; reducing or alleviating symptoms resulting from the compensable injury; maintaining the level of healing achieved; or preventing further deterioration of the damage produced by the compensable injury. *Univ. of Cent. Ark. v. Srite*, 2019 Ark. App. 511, 588 S.W.3d 849. Medical treatment intended to reduce or enable an injured worker to cope with chronic pain attributable to a compensable injury may constitute reasonably necessary medical treatment. *Nabholz Constr. Corp. v. White*, 2015 Ark. App. 102. A claimant is not required to furnish objective medical evidence of his or her continued need for medical treatment. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, 558 S.W.3d 408. It is a

10

claimant's burden, however, to establish by a preponderance of the evidence that the treatment is reasonable and necessary and bears a causal connection to the work injury. *Cossey v. Pepsi Beverage Co.*, 2015 Ark. App. 265, 460 S.W.3d 814. What constitutes reasonably necessary treatment is a question of fact for the Commission. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Cent. Moloney, Inc. v. Holmes*, 2020 Ark. App. 359, 605 S.W.3d 266. Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Id.*

Appellants argue on appeal that the Commission's decision that the recommended Superion procedure is reasonable and necessary in connection with appellee's compensable injury is not supported by substantial evidence. Specifically, appellants argue that Dr. Olaya failed to adequately explain why the procedure would be performed at L3-4 when it contended that appellee's injury was located at L4-5. Instead, appellants suggest that the need for the procedure is not necessary for the treatment of appellee's injury because it is "not related to his L4-5 annular tear and bulge." Appellants further argue that the "procedure is very new and is not reasonable given the minimal findings to the Appellee's spine." Moreover, appellants argue that Dr. Olaya is attempting to treat appellee's symptoms rather than his "objectively documented injuries" and that appellee's complaints do not match the MRI findings. However, appellants' arguments lack merit.

Appellants stipulated that appellee sustained a compensable injury, and it is undisputed that appellee has received continual treatments for pain management to his lower back since his injury. Despite being treated with medication and receiving several different types of injections by Dr. Olaya for years, appellee testified that he still has the same type of pain in the same location as he did after his compensable injury. This testimony was undisputed and, in fact, corroborated by the medical records. Dr. Qureski at the Arkansas Spine and Pain Center indicated on November 27, 2017, that "[p]alpation of the lumbar facet revealed tenderness on *both sides at L3- S1 region*. There is pain noted over the lumbar intervertebral spaces." And Dr. Olaya indicated on February 5, 2018, "*Palpation of the lumbar facet reveals tenderness on both the sides at L3-S1 region. There is pain noted over the lumbar intervertebral spaces (discs) on palpation.*" (Emphasis added.)

As a result of these MRI reports, treatments and Dr. Olaya's examination of appellee, Dr. Olaya recommended that appellee have a Superion procedure and wrote a letter explaining his reasoning for recommending the Superion procedure. The MRI dated October 31, 2017, includes a finding of mild ligamentum flavum hypertrophy at L-3-4, and the MRI dated June 5, 2020, includes a finding of shallow disc osteophyte in the subarticular to foraminal zones with minimal right neural foraminal stenosis at L3-4. Dr. Olaya explained that the Superion procedure was warranted because it is a proven technique that is very effective in the treatment of foraminal stenosis, ligamentum flavum hypertrophy, and spinal stenosis and that it is reasonable and necessary to control appellee's pain. Dr. Olaya further attributed appellee's need for the procedure to his compensable injury.

12

Appellants essentially ask us to reject Dr. Olaya's medical opinion that the Superion procedure is reasonable and necessary and bears a causal connection to the work-related compensable injury and reverse the Commission's decision. However, it is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Id.* Under the particular facts of this case, we cannot say that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* Therefore, we affirm the Commission's decision to award additional medical treatment.

Affirmed.

GLADWIN and KLAPPENBACH, JJ., agree.

*Michael E. Ryburn*, for appellants.

*Gary Davis*, for appellee.