Cite as 2023 Ark. App. 396

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-22-640

| | |
|---|---|
| MCDONALD'S AND AR MCDONALD'S SELF INSURED TRUST/RISK MANAGEMENT RESOURCES<br><br>APPELLANTS<br><br>V.<br><br><br>JIMMY KEY III<br><br>APPELLEE | Opinion Delivered September 20, 2023<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br><br>[NO. G907403]<br><br><br><br>AFFIRMED |

**KENNETH S. HIXSON, Judge**

This is a workers' compensation case. Appellee Jimmy Key III sustained a compensable injury to his lower back while working as a cook for appellant McDonald's on November 1, 2019. McDonald's accepted the injury as compensable and covered medical expenses through December 4, 2019, as well as a brief period of temporary total-disability (TTD) benefits.[1] Jimmy subsequently filed a claim for additional medical benefits and additional TTD benefits. McDonald's controverted the claim, contending that all appropriate benefits had been paid and that Jimmy's continued need for medical treatment, if any, was due to a preexisting condition. After a hearing, the Arkansas Workers'

---

[1]The record is unclear as to exactly when McDonald's discontinued paying TTD benefits, but it was evidently not long after it stopped paying medical benefits.

Compensation Commission awarded additional medical benefits, which included all treatment for Jimmy's lower back that was set forth in evidence as well as a back surgery recommended by Dr. Ted Shields. The Commission also awarded additional TTD benefits from the date of last payment to a date yet to be determined. McDonald's now appeals, arguing that the Commission's decision with respect to each of these issues is not supported by substantial evidence. We affirm.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.*

Jimmy testified that, while he was working at McDonald's on November 1, 2019, a customer whom he described as a "bigger woman" fell in the foyer. Jimmy was ordered to help her up from the floor, and as he was lifting her, he felt several pops on the left side of his lower back. Jimmy informed the assistant manager, Kierra Austin, that he needed to go

2

to the hospital.[2]   Jimmy testified that he could not drive himself, so he called his grandmother, and she drove him to the emergency room.

The emergency-room report indicated that although Jimmy reported having a previous back injury, on this occasion, he was suffering from back pain as the result of lifting a person from the floor.  The emergency-room examination revealed tenderness over Jimmy's left posterior sacroiliac spine, and he was instructed to see his primary-care physician for an MRI and a possible referral to neurosurgery.  Jimmy was later sent to a specialist and was diagnosed with disc bulges in his lower back.  Jimmy has since undergone medical evaluation and treatment for his lower back from multiple sources.

Jimmy testified that conservative treatment, including medication, physical therapy, and injections, has been unsuccessful.  Jimmy indicated that his pain level has been at about nine out of ten since suffering the compensable injury, and he described the pain as being in the lower left side of his spine and shooting down his leg.  Jimmy stated that he walks with a cane and that "the pain has stopped me from doing so much."  Jimmy testified, "I can't even live a normal life. . . . I can't put food on the table.  I can't pick up my kid.  I can't live a normal life like everybody else, and I can't make love to my wife."  Jimmy stated that he spends his days in bed.  In order to cook, he has to sit in a chair by the stove.  Jimmy stated that he wants to undergo back surgery that has been recommended by Dr. Shields but that he cannot afford it and is waiting for workers'-compensation insurance to cover it.

---

[2]In Kierra's testimony, she acknowledged that, shortly after the incident, Jimmy asked to leave work because his back was in pain.

Jimmy acknowledged in his testimony that he had complained of lower back pain prior to the compensable injury as documented in an October 6, 2019, medical report. Jimmy, however, described this prior condition as only a sprain and said that it was on the right side of his lower back as opposed to the left side.

Jimmy testified that he has been unable to work since suffering the November 1, 2019 compensable injury. Jimmy acknowledged, however, that he did receive some income from Murray Home Healthcare in connection to what he described as an emergency involving his ailing uncle. Jimmy stated that, for a month or two before his uncle passed away, he made meals for him and counted out his pills. Jimmy stated that for his help with his uncle, he received "maybe $116 every two weeks or so."

Shantel Williams, the grill manager for McDonald's, testified for the respondent. Shantel testified that on October 11, 2019 (which was three weeks before the compensable injury) Jimmy had returned to work after a brief absence and told her he had been off because he had injured his back working on a house. Jackie Frost Turner, the general manager for McDonald's, also testified for the respondent. Jackie testified that a few weeks before the compensable injury, Jimmy had called in and told her he hurt his back working on his grandmother's house and that he needed to take three or four days off.

The relevant medical evidence is as follows. The first medical report in the record is dated December 7, 2017, and was primarily related to Jimmy's ten-year history of anxiety but also documented low back pain for which Jimmy was "doing well with his current medication regimen and stretches." The only other medical report in the record that predated the

4

compensable injury was a report on October 6, 2019, which stated that Jimmy had presented with moderate low back pain that radiated into his right lower leg that began when he was working on a house remodel. The impression given in that report was "lumbar radiculopathy, right," and Jimmy was prescribed medication and instructed to follow up with his primary-care physician if his symptoms did not resolve. After taking a few days off work, Jimmy returned to work on October 11, 2019, and he worked from then until November 1, 2019, when he sustained the compensable injury.

When Jimmy initially sought emergency treatment for his compensable injury on November 1, 2019, the emergency-room report noted that Jimmy was suffering back pain as a result of lifting a person off the floor. The emergency-room exam revealed tenderness over the left sacroiliac spine, and Jimmy was prescribed hydrocodone and instructed to see his primary-care physician for an MRI and possible referral to neurosurgery.

On November 9, 2019, Jimmy was seen at the Urgent Team Jacobs Clinic and reported hurting his back on November 1, 2019, while lifting a three-hundred-pound female. Jimmy complained of severe pain in his left lumbar region with pain radiating to his left lower extremity. The examination revealed left lumbosacral swelling, left lumbosacral tenderness, and left lumbosacral spasm, and an MRI was ordered.

An MRI of Jimmy's lumbar spine was performed on November 12, 2019. The MRI revealed mild broad-based disc bulges at L4-L5 and L5-S1, and the MRI report also noted Grade I spondylolisthesis of L-5 and S-1 with suggested pars interarticularis defects.

Jimmy returned to the emergency room on November 27, 2019. On that visit, Jimmy reported severe lower back pain that was getting worse.

On December 4, 2019, Jimmy was sent to Dr. LaVerne Lovell. In his report, Dr. Lovell noted that the MRI showed degenerative changes at L4-L5 and L5-S1 with mild midline disc bulges as well as the appearance of bilateral pars defects. Dr. Lovell suspected that the pops Jimmy complained of while lifting the customer were related to the pars defects. In his report, Dr. Lovell prescribed the following plan:

> The patient is sent for therapy three times a week for four weeks. He will have a very restricted light duty work status with 5 pounds lifting and sit or stand as needed with no mopping or sweeping. We will also ask for CT scan of the lumbar spine to confirm the pars defects in his case so we know all the anatomy that we are working with in the lumbar spine. I will see him in follow-up after the therapy.

Dr. Lovell, however, also included an addendum in his report in which he stated:

> My nurse took the light duty work statement along with the instructions to get started on physical therapy and to get the CAT scan. Mr. Key stared screaming at my nurse referring to me as a stupid MFer and used terms of that nature multiple times and demanded his films back and demanded to leave. I take that as an indication that the patient does not want me to treat him and after that outburst, I refuse to see him again in the future. He is released today to a full duty work status. There are no findings on his MRI that are dangerous for him and none that I consider surgical in nature at this point. I am placing him at maximum medical improvement 12/4/2019 and at a full duty work status without restriction. He may seek other options if he wants to continue health care.

After Dr. Lovell placed Jimmy at maximum medical improvement and at full duty work status on December 4, 2019 (as reflected in the addendum), McDonald's discontinued covering Jimmy's medical expenses.

Despite McDonald's refusal to cover any additional medical treatment for Jimmy's compensable back injury, Jimmy continued to seek treatment. On July 29, 2020, Jimmy went to Pain Treatment Centers of America and saw Dr. Ted Shields. The report states:

> Jimmy . . . complains primarily of lower back pain. In addition, he complains of hip pain and leg pain. The patient states that the onset of pain was gradual with no known reason. It radiates to the back of the left leg. He states the pain is aching, burning, deep, numbing, sharp, and shooting . . . . The patient has been experiencing this pain for a few years.[3]

Dr. Shields stated that conservative treatment had failed and recommended a lumbar epidural steroid injection. The injection was administered on August 11, 2020, but afforded Jimmy no relief.

On October 14, 2020, Dr. Shields reported that conservative and minimally invasive therapies had failed, and he recommended surgery. Specifically, Dr. Shields recommended that Jimmy undergo a lumbar decompression and fixation with Stabilink implant. Another MRI was performed, which again revealed small disc bulges at L4-L5 and L5-S1 as well as no significant change from the previous MRI.

After reviewing the MRI, on March 17, 2021, Dr. Shields noted "[a]bnormalities found at L-5, S-1 that do not appear to be congenital in nature." Dr. Shields again recommended surgery as outlined above.

---

[3]In the Commission's opinion, it found that this initial report from Pain Treatment Centers of America likely contained an error because, in every subsequent report from Pain Treatment Centers of America, it was noted that "[t]he pain began following an injury/accident that occurred on 11/01/2019." At any rate, it is undisputed that a compensable injury occurred on that date.

Jimmy returned to Pain Treatment Centers of America on May 26, 2021, and was seen by Dr. Howard Bromley. After Dr. Bromley learned that insurance had declined the back surgery recommended by Dr. Shields and that Jimmy could not afford it, Dr. Bromley recommended a caudal epidural steroid injection. That injection was administered on June 10, 2021. In a follow-up visit with Dr. Shields on July 26, 2021, Jimmy reported that the injection did not benefit him.

In the opinion of the administrative law judge and, by adoption, the Commission, the Commission awarded additional medical benefits to include all the treatment of Jimmy's lower back injury that was set forth in evidence as well as the back surgery recommended by Dr. Shields. The Commission also awarded additional TTD benefits from the date last paid to a date yet to be determined. McDonald's challenges each of these findings on appeal, and we affirm.

## I. *Additional Medical Benefits*

McDonald's first argues that the Commission erred in awarding additional medical benefits. McDonald's notes that Dr. Lovell released Jimmy to full duty on December 4, 2019, and it contends that any additional treatment recommended after that date is associated with Jimmy's preexisting and chronic back pain and not the compensable injury.

Arkansas Code Annotated section 11-9-508(a) (Supp. 2023) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." A claimant who has sustained a compensable injury is not required to offer objective medical evidence to prove entitlement

to additional benefits; however, a claimant bears the burden of proving entitlement to additional medical treatment. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, 558 S.W.3d 408. Employers are only liable for such treatment as is reasonably necessary for the treatment of the claimant's injuries. *DeBoard v. Colson Co.*, 20 Ark. App. 166, 725 S.W.2d 857 (1987). What constitutes reasonably necessary treatment is a question of fact for the Commission. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. Furthermore, the Commission has the authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Cent. Moloney, Inc. v. Holmes*, 2020 Ark. App. 359, 605 S.W.3d 266.

Applying these standards, we conclude that substantial evidence supports the Commission's finding that Jimmy met his burden of proving entitlement to additional medical treatment. Although McDonald's relies on the addendum in Dr. Lovell's December 4, 2019 report wherein Dr. Lovell found that Jimmy was at maximum medical improvement and released him to full duty, this opinion was specifically rejected by the Commission. Instead, the Commission credited Dr. Lovell's contrary findings that he had expressed earlier in the *very same report*, where Dr. Lovell stated that Jimmy "will have a very restricted light duty" and recommended further testing and treatment. The Commission found that "[b]ased on a review of the medical records, it is apparent that Dr. Lovell's change was simply a retaliation against claimant's deplorable conduct" displayed during the doctor visit.

Although McDonald's correctly states that Jimmy reported low back pain during an October 6, 2019 doctor visit that predated the compensable injury, Jimmy returned to work for McDonald's on October 11, 2019, and he continued to work until the admittedly

compensable injury occurred on November 1, 2019, while lifting a customer from the floor. Moreover, the October 6, 2019 medical report documented lower back pain that radiated into Jimmy's *right* leg, whereas since the November 1, 2019 compensable injury, Jimmy has consistently complained of lower back pain radiating into his *left* leg. The postinjury medical reports documented tenderness over Jimmy's *left* posterial sacroiliac spine as well as *left* lumbosacral swelling, *left* lumbosacral tenderness, and *left* lumbosacral spasm. And the MRI detected disc bulges in Jimmy's lower back as well as pars defects that Dr. Lovell related to the pops Jimmy felt while lifting the customer from the floor. Dr. Shields recommended back surgery after identifying "[a]bnormalities found at L-5, S-1 that do not appear to be congenital in nature."

Although McDonald's argues that Jimmy's claimed need for treatment is related to a preexisting back condition, the Commission noted in its opinion that because an employer takes an employee as it finds him or her, employment circumstances that aggravate preexisting conditions are compensable. *See Hopkins v. Harness Roofing, Inc.*, 2015 Ark. App. 62, 454 S.W.3d 751. On this record we hold, at a minimum, that reasonable minds could conclude that Jimmy's continuing need for medical treatment to include the recommended back surgery is causally related to, and reasonably necessary for, treatment of a compensable aggravation. Nothing in the record suggests that any doctor had recommended back surgery before the compensable injury occurred. For these reasons, we affirm the Commission's award of additional medical treatment.

## II. *TTD Benefits*

McDonald's remaining argument is that substantial evidence does not support the Commission's award of additional TTD benefits through a date yet to be determined. Under this point, McDonald's again relies on Dr. Lovell's statement in the addendum of his December 4, 2019 report—which was expressly rejected by the Commission—that Jimmy had reached maximum medical improvement and could return to full duty. For the following reasons, we affirm the Commission's award of additional TTD benefits.

To be entitled to TTD benefits, the claimant must prove that he remains within his healing period and suffers a total incapacity to earn wages. *RPC, Inc. v. Hargues*, 2011 Ark. App. 264. The healing period is that period for healing of an accidental injury that continues until an employee is as far restored as the permanent character of his injury will permit, and the healing period ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve the condition. *Hope Sch. Dist. v. Wilson*, 2011 Ark. App. 219, 382 S.W.3d 782. Disability means "incapacity because of compensable injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the compensable injury." Ark. Code Ann. § 11-9-102(8) (Supp. 2023).

As stated, the Commission rejected Dr. Lovell's opinion that Jimmy had reached maximum medical improvement. The Commission instead determined that Jimmy had not reached maximum medical improvement and found that he is entitled to additional medical care and surgery, as recommended by Dr. Shields, to treat his compensable low back

11

condition. On the record presented, substantial evidence supports the Commission's finding that Jimmy's underlying condition causing the disability had not become stable and that he remains within his healing period.

That leaves the issue of whether Jimmy continues to suffer a total incapacity to earn wages. Jimmy testified that he is in constant pain and remains incapable of returning to work, and the Commission credited his testimony. It was for the Commission to assess the credibility of the witnesses. The Commission also credited Dr. Lovell's statement in his report (notwithstanding his later statement to the contrary in the same report) that Jimmy "will have a very restricted light duty work status with 5 pounds lifting and sit or stand as needed with no mopping or sweeping." The Commission noted in its opinion, citing *Arkansas State Highway Commission and Transportation v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981), that a claimant who has been released to light-duty work but has not returned to work may be entitled to TTD benefits where there is no evidence that the claimant has the capacity to earn the same or any part of the wages he was receiving at the time of the injury.

Finally, in arguing that Jimmy has not suffered a total incapacity to earn wages, McDonald's notes that after sustaining the compensable injury, Jimmy worked for Murray Home Health Care while helping his uncle for a month or two. The Commission concluded that this temporary position of very limited duration consisting only of meal preparation and medical administration for his sick uncle did not disqualify Jimmy from TTD benefits in light of Jimmy's testimony and the other evidence presented. If, during the period that the

12

body is healing, the employee is unable to perform remunerative labor with reasonable consistency and without pain and discomfort, his or her temporary disability is deemed total. *Univ. of Cent. Ark. v. Srite*, 2019 Ark. App. 511, 588 S.W.3d 849; *Farmers Coop. v. Biles*, 79 Ark. App. 1, 69 S.W.3d 899 (2002). The Commission found, on the basis of the evidence, that such is the situation here, and we hold that this finding was supported by substantial evidence. Therefore, we affirm the Commission's finding that Jimmy suffers a total incapacity to earn wages, and we affirm its award of additional TTD benefits.

### III. *Conclusion*

For the foregoing reasons, we hold that substantial evidence supports the Commission's awards of additional medical benefits and additional TTD benefits. Therefore, the Commission's decision is affirmed in its entirety.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for separate appellant McDonald's.

*Kathleen Talbott*, for appellee.

13