Cite as 2024 Ark. App. 454

# ARKANSAS COURT OF APPEALS
## DIVISION I
No. CV-23-440

| | |
|---|---|
| HAZEN SCHOOL DISTRICT AND ARKANSAS SCHOOL BOARDS ASSOCIATION | Opinion Delivered September 25, 2024 |
| APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | [NO. H204037] |
| JULIE INGLE | |
| APPELLEE | AFFIRMED |

**CINDY GRACE THYER, Judge**

The Hazen School District ("HSD") appeals from a decision of the Arkansas Workers' Compensation Commission ("the Commission") finding that appellee Julie Ingle proved her entitlement to additional medical treatment for a compensable injury to her left foot. HSD argues that the Commission's decision is not supported by substantial evidence. In addition, HSD assigns error to the Commission's calculation of Ingle's average weekly wages. We find no error and affirm.

I. *Factual and Procedural Background*

Ingle worked as a cafeteria worker for HSD, preparing lunch for around 450 schoolchildren each day. On January 8, 2021, Ingle was walking down a wet and slippery ramp that led to an outside freezer. She explained that she "had started down it and about halfway down, my right leg went straight out and my left foot bent back behind me, and I

slid the rest of the way down the ramp." Despite pain in her leg and foot, she was able to continue working that day. Within a few days, however, her ankle started swelling, and her knee, foot, and ankle were "burning." She saw Dr. Kleinbeck at the Baptist Health Medical Clinic in Stuttgart, who x-rayed her foot and put her in a boot.

On January 25, Ingle saw Dr. Goodson at Martin Orthopedics, complaining of ongoing left foot and left ankle pain. Dr. Goodson noted mild to moderate dorsal midfoot swelling and tenderness to palpation. He reviewed her x-rays and saw no acute fracture or significant degenerative joint changes but noted clinical findings that were consistent with a "midfoot bony contusion." Dr. Goodson put her in a shorter walking boot and advised she could continue to work so long as she was allowed to sit for the duration of her shift.

Ingle followed up with Dr. Goodson on March 3, at which time she told him that she had been improving until February 23, when she "felt a pop with sharp pain along the dorsal midfoot." The pain persisted as a "constant dull ache," so Dr. Goodson ordered an MRI. The MRI revealed "(1) no stress fracture, (2) minimal dorsal 1st tarsometatarsal joint marginal spurring, (3) small 1st MTP joint effusion, (4) mild subcutaneous edema in the dorsal midfoot/forefoot." Dr. Goodson reviewed the MRI and noted "mild subcutaneous edema within the dorsal midfoot, correlating with clinical exam." He advised Ingle that "these bony contusions can often take several months to resolve."

Ingle saw Dr. Goodson again on April 14 with continuing complaints of pain in her left foot. He referred her for physical therapy, which she began on April 29. By the time of her discharge from therapy, Ingle had "made some improvements in her left dorsum foot

pain level," but she still experienced pain on deep palpation of her left third metatarsal region, and bony projections could be felt in the dorsum region of her foot. Her physical therapist opined that she would "benefit from an ankle/foot specialist for further evaluation of her left ankle [and] foot pain."

Ingle returned to Dr. Goodson on June 17 and reported to him that the therapy had only helped with the stiffness in her foot and that she continued to experience pain. Dr. Goodson explained to Ingle that her injury involved a stretch or tear of a ligament in her foot, which is a type of injury that usually involves conservative intervention, such as icing, physical therapy, and NSAIDs.

In August 2021, the workers'-compensation claims adjuster sent Dr. Goodson a letter asking him to advise whether Ingle's work-related injury was the major cause of her foot pain. Dr. Goodson responded that he believed "that it is[,] based on previous clinical and radiographic evaluation over the last 6+ months of case since initial presentation on January 25, 2021. This is also based upon review of patient's outside clinical records prior to presentation to my clinic."

In December 2021, Ingle was seen by Dr. Jesse Burks, a podiatrist at Bowen Hefley Orthopedics. Dr. Burks ordered x-rays of Ingle's foot and saw no distinct evidence of fracture. Dr. Burks noted, however, that "there is an abnormal separation between the medial and intermediate cuneiforms" and explained to Ingle that "this could be an indication of rupture of Lisfranc's ligament[, e]specially given her symptoms and the type of injury she sustained." Dr. Burks also observed some changes consistent with posttraumatic arthrosis, which could

3

have been from subluxation at the second metatarsal intermediate cuneiform joint. Dr. Burks therefore ordered an MRI to rule out the possible Lisfranc ligament rupture or the possible subluxation.

The MRI revealed no evidence of occult fracture but revealed moderate edema in the ventral aspect of the subcutaneous tissues of the midfoot and forefoot as well as "increased T2 signal . . . in the mid and distal aspect of the [Lisfranc] ligament consistent with sprain." Dr. Burks prescribed Cymbalta and scheduled another appointment for Ingle. On December 15, however, Ingle called Dr. Burks complaining of significant pain in her foot. She was given a prescription for Toradol. Dr. Burks noted that "because of the severity of her pain and the fact that it occurred greater than a year ago, [we] will most likely need to pursue tarsometatarsal arthrodesis."

Ingle saw Dr. Burks again in January 2022, at which time she was "still having significant pain in the left midfoot. [She] states some days she has very little pain but of the day [sic] she has horrible pain [and] is almost unable to walk. When asked [to locate the pain] she points to the second [and] third met[atarsal] bases." Dr. Burks noted an impression of "left midfoot arthrosis secondary to trauma" and discussed the possibility of surgery with Ingle. She stated she understood the risks and agreed to the surgery.

On January 31, 2022, Dr. Burks authored a "[t]o whom it may concern" letter stating the following:

> 1. Her original diagnosis on [February 8, 2021] was a foot sprain. When I evaluated her, my working diagnosis has been tarsal-metatarsal dislocation.

4

2. The pathology on the MRI and x-ray reveals increased separation between the medial and intermediate cuneiforms. This is injury related. I do not find any pre-existing condition.

3. In regards to the foot, I believe that all of her symptoms are directly related to the [January 8, 2021] injury.

4. She has failed all forms of conservative treatment. Injections have provided temporary relief. It is too far out from the original injury to perform a repair of the soft tissue. My recommendation is limited tarsometatarsal arthrodesis of the affected areas.

5. Current treatment is indicated. This would include a limited tarsometatarsal arthrodesis. This is a result of the [January 8, 2021] injury.

6. Additional treatment is indicated.

7. Patient is not at MMI.

The case manager referred Ingle to Dr. Troy Ardoin at OrthoArkansas for an independent medical exam (IME) in May 2022. Dr. Ardoin agreed that her left foot contusion was work related. He also noted, however, that she suffered from morbid obesity that was "secondarily affecting foot pain due to axial load stress" and from erosive osteoarthritis that was not related to the work injury. Dr. Ardoin was unable to conclude within a reasonable degree of medical certainty that the proposed midfoot arthrodesis was a direct result of Ingle's work-related injury and opined there was "no further treatment needed for the contusion that she sustained on 1/8/2021." Dr. Ardoin determined that Ingle was at maximum medical improvement and found there was no permanent impairment. He released her to return to work with no restrictions on May 19, 2022.

After Ingle's request for approval for surgery was rejected, she sought a hearing before an administrative law judge (ALJ). In anticipation of that hearing, her attorney asked Dr. Burks to review Dr. Ardoin's IME. Dr. Burks replied that "the nature of her injury directly contributed to the pain in her midfoot. The degenerative changes in the tarsometatarsal region of her foot are consistent with her description of the pain and also the injury. This is a progressive condition that will at some point require surgical intervention."

The matter proceeded to a hearing before an ALJ to determine whether the additional medical treatment in the form of surgery was reasonably necessary for the treatment of a compensable injury. At the hearing, Ingle described the accident and injury as well as the course of her medical treatment. Ingle admitted that she had arthritis and plantar fasciitis in both feet, and she agreed that she had been seeing a rheumatologist for her arthritis pain and was seen regularly at the Cabot Foot Clinic for her fasciitis. Ingle stated that she had received injections in her feet but that they helped only for a day or two at a time. Medical records dating from before the date of her injury showed her treatment with the rheumatologist and the foot clinic.

Ingle testified about her discussions with Dr. Burks and said that he described the recommended surgery as fusing her bones back together to repair the ligaments and bones that were separated. She noted that she had seen Dr. Ardoin only once and that he had not recommended anything other than "laser injections." She explained that she still had pain in her foot and said she was prepared to have the surgery--in fact, she said she would have it "whether it's agreed today or not"--because the pain was unbearable.

After considering the testimony and medical evidence, the ALJ determined that Ingle was "suffering from multiple pre-existing conditions such as arthritis and . . . plantar fasciitis prior to the accident." The ALJ gave greater weight to Dr. Ardoin's opinion that Ingle's problems were related more to degenerative erosive arthritis rather than the contusion. As such, the ALJ found that "the surgery recommended by Dr. Burks is found to not be reasonable and necessary for the treatment of the compensable injury."

Ingle appealed the ALJ's decision to the full Commission. The Commission acknowledged Dr. Ardoin's opinion that the alleged necessity of midfoot arthrodesis was not a direct result of the work-related injury. It found, however, that the opinion of Dr. Burks, who was Ingle's treating physician, was entitled to greater weight than that of Dr. Ardoin and that Ingle was entitled to the limited tarsometatarsal arthrodesis as recommended by Dr. Burks.[1]

HSD timely appealed the Commission's decision and now argues that the Commission's opinion is not supported by substantial evidence. It also asserts that the Commission erred in its calculations of Ingle's average weekly wage for purposes of workers'-compensation benefits.

II. *Standard of Review*

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Ark. Dep't of Transp. v. Hill*,

---

[1]The dissenting commissioner would have accorded greater weight to Dr. Goodson's and Dr. Ardoin's opinions.

7

2023 Ark. App. 425, 676 S.W.3d 329. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.* It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). This court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858.

### III. *Additional Medical Treatment*

In its first point on appeal, HSD contends that the Commission's conclusion that Ingle is entitled to additional medical treatment is not supported by substantial evidence. Arkansas Code Annotated section 11-9-508(a) (Supp. 2023) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." A claimant may be entitled to additional medical treatment after the healing period has ended if the treatment is geared toward management of the injury. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004). These services can include diagnosing the nature and extent of the compensable injury; reducing or alleviating symptoms resulting from the compensable injury; maintaining the level of healing achieved; or preventing further deterioration of the

damage produced by the compensable injury. *Univ. of Cent. Ark. v. Srite*, 2019 Ark. App. 511, 588 S.W.3d 849. Medical treatment intended to reduce or enable an injured worker to cope with chronic pain attributable to a compensable injury may constitute reasonably necessary medical treatment. *Nabholz Constr. Corp. v. White*, 2015 Ark. App. 102.

A claimant who has sustained a compensable injury is not required to offer objective medical evidence to prove entitlement to additional benefits; however, a claimant bears the burden of proving entitlement to additional medical treatment. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, 558 S.W.3d 408. Employers are liable only for treatment that is reasonably necessary for treatment of the claimant's injuries. *DeBoard v. Colson Co.*, 20 Ark. App. 166, 725 S.W.2d 857 (1987). What constitutes reasonably necessary treatment is a question of fact for the Commission. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. Furthermore, the Commission has the authority to accept or reject medical opinion and to determine its medical soundness and probative force. *McDonald's v. Key*, 2023 Ark. App. 396, 674 S.W.3d 757.

Applying these standards, we conclude that substantial evidence supports the Commission's finding that Ingle met her burden of proving entitlement to additional medical treatment. Although HSD points to Dr. Goodson's opinion that only conservative treatment was necessary and Dr. Ardoin's opinion that her pain was more related to arthritis than to her compensable injury, the Commission rejected those doctors' conclusions. Instead, the Commission credited Dr. Burks's opinion and gave his recommendation greater weight.

HSD essentially asks us to reject Dr. Burks's medical opinion that the limited tarsometatarsal arthrodesis is reasonable and necessary and bears a causal connection to the work-related compensable injury and reverse the Commission's decision. However, it is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *S. Tire Mart, LLC v. Perez*, 2022 Ark. App. 179, 644 S.W.3d 439. Given the facts of this case, we cannot say that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* Therefore, we affirm the Commission's decision to award additional medical treatment.

## IV. *Average Weekly Wage*

In addition to Ingle's entitlement to additional medical treatment, the parties litigated the issue of her average weekly wage. HSD asserted that it was $416.72, which the ALJ determined to be correct. The Commission, however, found that her average weekly wage was $468. HSD assigns error to this point as well.

Under Arkansas Code Annotated section 11-9-518(a)(1) (Repl. 2012), "[c]ompensation shall be computed on the average weekly wage earned by the employee under the contract of hire in force at the time of the accident and in no case shall be computed on less than a full-time workweek in the employment."

Ingle testified that her rate of pay was $11.70 an hour and that she worked eight hours a day, five days a week, totaling forty hours a week. Her employment contract corroborated that pay rate and reflected a "total 2020–2021 contract amount up to $16,848" for 180 days

10

between the dates of July 1, 2020, and June 30, 2021. The Commission determined that Ingle's average weekly wage "should be calculated by dividing her salary of $16,848 by 36 weeks (180 days ÷ 5 work days a week)." Dividing $16,848 by 36 weeks equals $468 a week.

HSD argues that this calculation is in error and cites *Magnet Cove School District v. Barnett*, 81 Ark. App. 11, 97 S.W.3d 909 (2003), in support of its argument. *Magnet Cove*, however, actually supports the Commission's decision here. In that case, this court affirmed the Commission's decision to calculate the claimant's average weekly wage by dividing her total compensation by the designated number of work weeks in her nine-month period of employment, even though she was paid in twelve installments over the course of a year. The claimant in *Magnet Cove* had a total compensation of $26,500 and had a contract to work thirty-nine weeks over a nine-month period employment. The Commission in *Magnet Cove* therefore divided $26,500 by 39 and concluded that claimant's average weekly wage was $679.49.

That appears to be precisely what the Commission did in this case. It began with Ingle's contract, which states that her pay is "[t]he total 2020–2021 contract amount up to $16,848 for the number of days listed above." The "number of days listed above" was 180 total days, at an hourly rate of $11.70 for eight hours of work a day. As noted above, Ingle testified that she worked five days a week. Dividing 180 days by 5 (i.e., a five-day work week) results in 36 weeks. The Commission therefore divided the total contract amount of $16,848 by 36 weeks and determined that Ingle's average weekly wage was $468.

11

We see no error in the Commission's calculations and therefore affirm its determination of Ingle's average weekly wage.

Affirmed.

HARRISON, C.J., and GRUBER, J., agree.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellants.

*Moore, Giles & Matteson, LLP*, by: *Gregory Ross Giles*, for appellee.